**UNITED STATES of America,**
**Appellee,**
v.
**Larry Kent ZINK, Appellant.**
**No. 20251.**

United States Court of Appeals,
Eighth Circuit.
Jan. 25, 1971.

Richard W. Smith, Lincoln, Neb., for appellant.

Richard A. Dier, U. S. Atty., and Robert J. Becker, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HEANEY, Circuit Judge.

This is an appeal from the District Court's denial of the appellant's motion for vacation of proceedings filed pursuant to Rule 12 of the Federal Rules of Criminal Procedure.

The appellant pleaded guilty, in the United States District Court for the District of Nebraska, to a two-count indictment alleging that he violated 50 U.S.C. App. § 462(b) (3), by knowingly destroying his Selective Service registration and classification certificates. He was sentenced to an indeterminate term under the Youth Corrections Act. 18 U.S.C. § 5010 et seq. Subsequent to his sentencing, he raised, by written motion for vacation of proceedings, three objections: (1) that the United States Attorney had practiced a prosecutive procedure calculated to deny the defendant his right to judicial review of the propriety of his draft board's refusal to reclassify him as a conscientious objector in violation of Section 10(b) (3) of the Selective Service Act of 1967;[1] (2) that the court, in sentencing the appellant, had taken into account impermissible factors; and (3) that 50 U.S.C. App. § 462(b) (3) denies to appellant his right of free speech under the First Amendment. We affirm the District Court's denial of the motion.

The facts are undisputed. On February 13, 1969, the appellant, a 22-year-old college student, burned his Selective Service registration and classification certificates before a group of college students at the University of Nebraska. Subsequently, the appellant filed, with his local draft board, an application for classification as a conscientious objector which the board rejected. The record is not entirely clear, but it appears that the local board's action was sustained by the Appeal Board. For personal reasons not germane to this appeal, he left college in March or April of 1969, and went to Oregon where he remained until September, 1969. The appellant took care to notify his draft board of this move and made proper arrangements to have the site of his induction transferred to Oregon. September 10, 1969, was set as the date for the appellant's induction. On that date, he refused to take the symbolic step forward, and the United States Attorney in Portland was immediately notified of this refusal. To the best of our knowledge, no charges have been filed in Oregon on the appellant's refusal to be inducted.

A day or two after he refused induction, the appellant was arrested in Oregon on the indictment returned by a federal grand jury in Nebraska on September 5. There is no adequate explanation why an indictment on the cardburning charges was not issued until as late as September 5, immediately prior to the appellant's scheduled induction.

Following his arrest in Oregon, the appellant, by way of a consent to transfer for plea and sentence pursuant to 18 U.S.C. Rule 20,[2] waived trial in the

---

1. The pertinent part of the statute provides as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form. * * *"
50 U.S.C.App. § 460(b) (3).

2. The pertinent provisions of Rule 20 state:

"A defendant arrested or held in a district other than that in which the indictment or information is pending against him may state in writing that he wishes to plead guilty or *nolo contendere*, to waive trial in the district

District of Nebraska, stated that he wished to plead guilty to the indictment and requested that the Nebraska offense be disposed of in Oregon. Neither of the United States Attorneys for Nebraska or Oregon consented to this request, and the appellant was transferred back to Nebraska.

An attorney was appointed to represent the appellant in the District Court in Nebraska. At his arraignment, the appellant orally objected to the continuation of the proceedings for the reason that the procedure of the United States Attorney in selecting to prosecute the card-burning separately in Nebraska denied his right to a judicial review of his draft board's action which he would have had had he been prosecuted for refusal to be inducted. This objection was overruled and the appellant entered pleas of guilty to both counts of the indictment.

The same objection was raised prior to sentencing, and was again overruled. There followed the written motion for vacation of proceedings, the denial of which is the subject of this appeal.

We turn next to the merits of the appellant's contentions.

## I.

█ The essence of the appellant's first argument is that the refusal of the United States Attorneys to consent to a transfer of the § 462(b) (3) proceedings to the United States District Court in Oregon deprived him of the right to have the action of his draft board, refusing his conscientious objector application, judicially reviewed. We cannot agree with the appellant for two reasons.

First, at the time of the request, charges had not been filed in Oregon for refusal to be inducted. No such charges have been filed to the present date. It would be mere speculation for us to conclude that the appellant would have been charged with refusal of induction if the proceedings had been transferred to Oregon. The appellant's right to a conscientious objector classification can be litigated if and when he is charged with refusal to be inducted. The card-burning and refusal of induction were two separate offenses. We do not see how the appellant's rights under Section 10(b) (3) of the Selective Service Act have been infringed.

Second, Rule 20 requires the consent of the United States Attorneys for both districts before a case may be transferred from one district to another.[3] The appellant has not cited any cases, and we have discovered none, standing for the proposition that United States Attorneys, under circumstances similar to those in this case, are required to consent to a transfer under Rule 20.

The appellant argues in his brief that " * * * there is every reason in this case for the government to have sought and procured the indictment as to Zink's refusal to comply with an order of induction in Oregon, and then accept Zink's request for trial of both matters in Nebraska (or in Oregon) by transfer under Rule 21(b) of the Federal Rules of Criminal Procedure." He goes on to argue that Rule 21(b) allows a transfer in the interest of justice. Considering the posture of the case at that time, we find this argument inapt.

## II.

The appellant contends that the District Judge, in imposing sentence, took into consideration impermissible factors.

Throughout the proceedings, the refusal to be inducted in Oregon was alluded to by all parties. Numerous state-

in which the indictment or information is pending and to consent to disposition of the case in the district in which he was arrested or is held, subject to the approval of the United States attorney for each district. * * * "

3. The Notes of the Advisory Committee on Rules state with respect to Rule 20, "In order to prevent possible interference with the administration of justice * * * the consent of the United States attorneys involved is required."

ments by the judge and his reaction to the United States Attorney's apparent suggestion that a three-month sentence would be appropriate [4] might lead one perusing the record as a whole to conclude that the judge did consider the refusal to be inducted. We cannot escape the conclusion that the Oregon offense was on the District Judge's mind. Indeed, in sentencing the defendant to an indeterminate term under the Youth Corrections Act,[5] the judge stated:

"I do not believe that you should be placed on probation. I think, differ-

---

4. The following colloquy between the court and the United States Attorney occurred just after the appellant's attorney had suggested a three-month sentence as appropriate, and just before the judge imposed sentence:

"MR. NELSON [U. S. Attorney]: * * * I think a sentence of at least the amount mentioned would be appropriate.

"COURT: Are you making any recommendation as to the amount of the sentence?

"MR. NELSON: I am making no recommendation.

"COURT: Are you saying that——?

"NELSON: Except I believe a sentence of imprisonment or jail would be appropriate.

"COURT: Are you saying it should be a three month sentence? Let's make sure I understand now what you are saying?

"NELSON: I am saying, your Honor —I think I said that I have no specific argument to make, to say that that was an improper sentence; and I would suggest that the Court impose a sentence of imprisonment of at least that much. That is what I intended to——

"COURT: Are you saying that it should be no longer than that?

"NELSON: I am not saying that. I am not saying that it should be no longer; no, sir. But a significant sentence, I think 3 months would be significant; and if the Court might well believe that a longer one would be, I would certainly not object to——

"COURT: I am very interested in this. If that is the position of the Government, it should only be 3 months, I want to know it right now.

"NELSON: That is not the position.

"COURT: Then why are you saying that 3 months would be enough? I think the Government must cut its cloth, one way or the other.

"NELSON: I will withdraw any recommendation, your Honor."

5. The District Judge indicated reservations about sentencing a draft offender under the Youth Corrections Act, but stated that he had already "cut his cloth" on that question. The writer shares his concern. I believe it is clear from House Report No. 2979, 1950 U.S.Cong.Serv. p. 3983, that the Act was intended to prevent "the degenerative and needless transformation of many of these young persons into habitual criminals." The Act was aimed at the involvement of young persons in crimes such as homicide, robbery, assault, burglary, larceny, auto theft and rape. House Report No. 2979, *supra*. It was designed to afford an opportunity for corrective treatment and rehabilitation in contemplation of the offender's return to the community as a useful citizen. Brisco v. United States. 368 F.2d 214 (3rd Cir. 1966). The act was directed toward young persons convicted of crime in an effort not to punish them but to reform them through education, vocational training and other forms of treatment. United States v. Lane, 284 F.2d 935 (9th Cir. 1960); Pendleton v. Nelson, 279 F.Supp. 137 (N.D.Cal.1967); Coats v. Markley, 200 F.Supp. 686 (S.D.Ind.1962).

Here, the Y.C.A. sentence would not appear to be appropriate. There is no indication in the record that the trial court felt that this defendant, a young man with no prior convictions, strong family ties, a good education and the ability to support himself, could benefit from the rehabilitative programs currently available under the Y.C.A. Rather, the trial court indicated its feeling that a lengthy sentence should be imposed to punish the defendant and deter others from engaging in similar conduct.

Other courts have used the Youth Corrections Act in sentencing draft offenders. See, *e. g.*, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); United States v. Dancis, 406 F.2d 729 (2nd Cir. 1969). In *Dancis*, the sentence was challenged on the ground that it constituted cruel and unusual punishment. The Court held that it did not and, in dicta, explained that the sentence was an attempt to treat the defendant more humanely. I cannot agree with this analysis. I note the non-concurrence of my colleagues Van Oosterhout and Hanson in this footnote.

**1252**

ing from the 3 months sentence, that it would be improper if you were given a sentence that permitted you to escape service, or that would give you the opportunity to go to school or otherwise to go out and work during the period of time that some other boy from your community would be serving in the Armed Services of the United States."

 We find it somewhat difficult to understand the severity of this sentence, particularly in the light of the United States Attorney's suggestion, unless the court had in mind that the defendant was attempting to escape the draft by illegal means. At the hearing on the motion for vacation of proceedings, however, the issue of the judge's consideration of the Oregon offense in imposing sentence was specifically raised. The District Judge reiterated his conviction that the offense was serious and categorically denied that the refusal of induction was in any way connected with the proceedings before him. We accept this statement and find the record insufficient to permit us to remand this case for reconsideration of the sentence on the grounds that impermissible factors were considered. See generally, Marano v. United States, 374 F.2d 583 (1st Cir. 1967); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960). Nor is it the practice of this Court to disturb sentences which are within the statutory limits. See, Heath v. United States, 375 F.2d 521 (8th Cir. 1967).

### III.

The appellant's last contention is that he was denied his right to free speech by the prohibitions of 50 U.S.C. App. § 462(b) (3). The argument that the burning of draft cards is protected free speech has been answered definitively by the Supreme Court in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The Supreme Court recently denied certiorari in a case attempting to raise the same issue. United States v. Kiger, 421 F.2d 1396 (2nd Cir. 1970), cert. denied, 398

U.S. 904, 90 S.Ct. 1693, 26 L.Ed.2d 63 (1970). Thus, *O'Brien* remains binding upon us, and for that reason, the appellant's final contention must be rejected.

The judgment of the District Court is affirmed.