**UNITED STATES of America,**
**Appellant,**

v.

**Helen Mae LANE, Appellee.**

**UNITED STATES of America,**
**Petitioner,**

v.

**Honorable Fred KUNZEL, Respondent.**

**No. 16874.**

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1960.

Joseph M. F. Ryan, Jr., Acting Asst. Atty. Gen., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., St. John Barrett, Harold H. Greene, Gerald P. Choppin, Attorneys, Department of Justice, Washington, D. C., for appellant and petitioner.

Gerald E. Olson, San Diego, Cal., for appellee.

Thomas Whelan, P. Timothy Murphy, Harry D. Steward, San Diego, Cal., for respondent, Kunzel.

Howard R. Harris, San Diego, Cal., amicus curiæ.

Harold R. Tyler, Jr., Asst. Atty. Gen., Harold H. Greene, Howard A. Glickstein, Attorneys, Department of Justice, Washington, D. C., for appellant and petitioner, United States.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

The United States here questions the action of the district court in granting probation to a minor female convicted of the illegal importation of heroin in violation of section 105 of the Narcotic Drugs Import and Export Act of 1956, 21 U.S. C.A. § 174. The government contends power to grant probation upon such conviction is denied by section 103(d) of this act, 26 U.S.C.A. § 7237(d). Section 7237(d) provides that as to all persons convicted of offenses specified therein "the imposition or execution of sentence shall not be suspended, probation shall not be granted * * *." Appellee and respondent contend, however, that the granting of probation in this case is authorized by section 2(a) of the Federal Youth Corrections Act, enacted in 1950, 18 U.S.C.A. § 5010(a).

The relevant facts are not in dispute. On March 2, 1960, Helen Mae Lane, then nineteen years of age, was convicted upon her plea of guilty of the illegal importation of heroin in violation of section 174. Having adjudged her a youth offender, the district judge suspended the imposition of sentence and placed her on probation for a period of three years, pursuant to section 5010(a). On March 8, 1960, proceeding under rule 35, Federal Rules of Criminal Procedure, 18 U.S. C.A., the government moved to correct the sentence. The validity of the sentence was challenged on the ground that it was below the mandatory minimum required to be imposed for violation of section 174. This motion was denied on March 18, 1960.

Being uncertain whether the proper procedure to obtain a review in this court would be by way of appeal or by petition for a writ of mandamus, the government decided to pursue both methods. On March 24, 1960, a notice of appeal from the order of March 18, 1960, denying the motion to correct sentence was filed. Five days later the government filed a notice of appeal from the judgment and sentence entered on March 2, 1960. A printed record was filed in this court on June 3, 1960.

On June 13, 1960, the government filed here a motion for leave to file a petition for a writ of mandamus and a motion to advance the case for hearing and decision pursuant to rule 8, (2) of the rules of this court, 28 U.S.C.A. On the same day the government filed a brief in support of the appeal and, alternatively, of the application for a writ of mandamus. We granted the motion for leave to file the petition and ordered the district judge to show cause why the writ should not issue. The matters were set for argument during the first month of the 1960 fall term of court.

Appellee Helen Mae Lane first contends that an appeal does not lie in this case and that, without reaching the merits, this court should in the exercise of its discretion deny the petition for a writ of mandamus. Respondent judge takes no position as to the availability of appeal but joins appellee in arguing that apart from the merits, the petition should be denied.

The government's right to appeal in criminal cases is governed by the

Criminal Appeals Act, 18 U.S.C.A. § 3731. The judgment and commitment in which the suspension of sentence and granting of probation is provided for finds no counterpart in the types of orders appealable by the government under section 3731. It follows that the government may not appeal from that judgment or any part of it under section 3731.

The government does not contend otherwise. It argues, however, that the appeal from that part of the judgment which suspends the imposition of sentence and grants probation may be entertained outside of the Criminal Appeals Act under the general authority of 28 U.S.C.A. § 1291. This section gives United States Courts of Appeals jurisdiction of appeals from "all final decisions" of the district courts. In support of this contention the government cites Carroll v. United States, 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442. It was there stated that certain orders relating to a criminal case "may be found to possess sufficient independence * * * to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291, 28 U.S.C.A. § 1291 without regard to the limitations of 18 U.S.C.A. § 3731."

In Carroll, however, it was pointed out (354 U.S. at page 400, 77 S.Ct. at page 1336) that "appeals by the Government in criminal cases are something unusual, exceptional, not favored," and that the Criminal Appeals Act was drawn to carefully limit government appeals.[1] Thus, instances in which orders in a criminal case will be found to possess both such independence and finality are, as the court said in Carroll, "very few." An order denying a motion to reduce excessive bail was held to fall in this category, the court citing Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. Other cases were also noted in which orders for the suppression or return of illegally seized property had been made the subject of government appeals when the motion was made prior to indictment, or in a different district from that of the trial, or after dismissal of the case, or where the emphasis was on the return of property. But the court in Carroll distinguished these cases from one in which the motion was made after indictment in the district of trial.

The only instances which have been called to our attention in which the government has been permitted an appeal from an order granting probation have been where such order was entered on defendant's application for probation sometime after and independent of the judgment and sentence of the court.[2]

We hold that the attempted appeal from that part of the judgment which suspends the imposition of sentence and grants probation does not possess sufficient independence from the criminal proceeding to permit of a government appeal under 28 U.S.C.A. § 1291.

We reach the same conclusion with respect to the attempted appeal from the order denying the government's motion made under rule 35 to correct the sentence. Such a motion is made in the original case. Heflin v. United States, 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407. Since it pertains to the validity of the judgment originally imposed, it has no more independence from the criminal proceeding than would an appeal from the judgment itself.

■ The government's alternative method of obtaining a review by applying for a writ of mandamus is an available remedy in an appropriate case. This is made clear by the decision in Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, in which such a writ was issued by the Supreme Court directing a district court to annul an invalid order suspending sentence.

---

1. See also United States v. Apex Distributing Company, 9 Cir., 270 F.2d 747, 751.

2. United States v. La Shagway, 9 Cir., 95 F.2d 200; United States v. Albrecht, 7 Cir., 25 F.2d 93; United States v. Cook, 5 Cir., 19 F.2d 826.

Respondent and appellee do not dispute this proposition. However, they invoke the established rule that regardless of the merits the granting of relief by way of a writ of mandamus lies within the sound discretion of the court. In this connection they cite decisional support for the view that mandamus when directed against a judge is a drastic and extraordinary remedy to which resort should be taken only in extraordinary cases.[3] Our attention has also been directed to United States v. Carter, 9 Cir., 270 F.2d 521, in which this court, exercising its discretion and without reaching the merits, declined to grant relief by way of mandamus in a case involving the same basic question which is now before us.

In Carter we declined to entertain a mandamus proceeding on the merits because of the lapse of time and intervening events between the date of sentence and the date the mandamus proceeding was instituted. It was our view that under the circumstances of that case there had been unnecessary delay in filing the petition with the result that the granting of the writ would have worked a substantial hardship which could have been avoided.

We do not have that feeling about this case. The government, being justifiably uncertain whether appeal or mandamus was the proper remedy, decided to follow both courses concurrently. An appeal was instituted shortly after the motion to correct sentence was denied. The record on appeal was docketed in this court on April 26, 1960, which was within the period of time prescribed by rule 39(c), Federal Rules of Criminal Procedure, 18 U.S.C.A. Rule 18, (1) of the rules of this court requires that appellants' briefs be filed within thirty days after receipt of copies of the printed record. In this case the government filed its brief ten days after the filing of the printed record. At the same time the government

filed its motion to file a petition for a writ of mandamus.

It is true that the government could have filed the latter motion at an earlier date. But in view of the pendency of the appeal we would undoubtedly have withheld action on the motion until the appeal was also ready for consideration. As before indicated, the appeal was perfected with all reasonable expedition. In view of these circumstances we find no good reason for declining to consider on the merits the petition for a writ of mandamus. We now proceed to do so.

■ The federal courts have no nonstatutory authority to grant probation. As previously noted, the statute relied upon by the trial judge in suspending the sentence of Helen Mae Lane and granting her probation is 18 U.S.C.A. § 5010(a). This section, which is a provision of the Federal Youth Corrections Act enacted in 1950, reads as follows:

> "(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation."

■ The government contends that with respect to certain offenses section 5010(a) was repealed or amended by 26 U.S.C.A. § 7237(d) enacted in 1956. This section reads:

> "Upon conviction (1) of any offense the penalty for which is provided in subsection (b) of this section, subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended, or such Act of July 11, 1941, as amended, or (2) of any offense the penalty for which is provided in subsection (a) of this section, if it is the offender's second or subsequent offense, the imposition or execution of sentence shall not be suspended, probation shall not be

---

3. See LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290; Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Frost v. Yankwich, 9 Cir., 254 F.2d 633.

granted, section 4202 of title 18 of the United States Code shall not apply, and the Act of July 15, 1932 (47 Stat. 696; D.C.Code 24–201 and following), as amended, shall not apply."

One of the offenses named in section 7237(d) is subsection (c) of section 2 of the Narcotic Drugs Import and Export Act of 1956, codified as 21 U.S.C.A. § 174. This is the offense of which Helen Mae Lane was convicted.

No statute relating to suspension and probation is expressly repealed or amended by section 7237(d). The parties are agreed, however, that this section by implication repeals or amends 18 U.S.C.A. § 3651, which is the provision of the general Federal Probation Act authorizing the suspension of sentences and the granting of probation. Appellee and respondent, however, contend that the effect of section 7237(d) in repealing or amending statutes by implication stops with the general probation act and does not extend to section 5010(a), which is a provision of the Federal Youth Corrections Act.

■ The language of section 7237(d) does not express or suggest any such limitation. It provides that with respect to certain offenses, including violations of section 174, "the imposition or execution of sentence shall not be suspended, probation shall not be granted." Being all-inclusive in its terminology, it would seem that an exception in the case of persons subject to the Federal Youth Corrections Act would have been stated if this was the intention. But there is neither a stated exception nor wording which suggests a doubt concerning the application of the prohibition to all section 174 convictions. Hence we find in the statute no ambiguity in this regard, such as is ordinarily required before resort may be had to legislative history.

■ If it nevertheless be assumed that an ambiguity lurks within the wording of section 7237(d) which would warrant further exploration, the legislative history provides solid support for the government's position. The committee report quoted in the margin makes clear that one of the prime purposes of the 1956 act was to discourage the practice of recruiting young people to engage in the narcotics traffic.[4]

Section 7237(d) itself contains other implicit evidence that Congress intended to prohibit suspensions of sentences and the granting of probation in narcotics cases whether or not the convicted person is a youth offender. That section specifically provides that 18 U.S.C.A. § 4202 relating to parole shall not apply. But it does not mention 18 U.S.C.A. § 5015(a)(1) providing for the conditional release of youth offenders. Likewise section 7237(d) provides that the act of July 15, 1932, D.C.Code 1940 § 24–201, dealing with the indeterminate sentence law of the District of Columbia shall not apply, but no mention is made of the in-

4. House Report No. 2388 of the Committee on Ways and Means to accompany H.R. 11619 (vol. 2, U.S.Code Cong. & Ad.News 1956, 84th Cong., 2d Sess., pp. 3274, 3303–04), reads in part:
   " * * * We have adduced substantial evidence that because of the severe penalties on repeating offenders and the fact that suspension and probation are not available in the case of an individual with a record of prior narcotic convictions there has been an increase in first offender traffickers. Repeating offenders subject to the heavier mandatory penalties under the Boggs law have moved into the background and recruited young hoodlums as peddlers in the narcotic traffic. These recruits are subject to the minimum mandatory sentence of 2 years with the possibility of suspension or probation. * * * The majority of these individuals have prior records of crime. * * * With the possibility of receiving probation or a suspended sentence, these unscrupulous individuals are willing to risk apprehension for the fantastic profits derived from this type of crime. * * * Unless immediate action is taken to prohibit probation or suspension of sentence, it is the subcommittee's considered opinion that the first-offender peddler problem will become progressively worse and eventually lead to the large-scale recruiting of our youth by the upper echelon of traffickers."

determinate commitment provisions of the Federal Youth Corrections Act, 18 U.S.C.A. § 5010(b) and (c).

This demonstrates, we believe, that when Congress desired section 7237(d) to effect the repeal or amendment of some but not all of the statutes dealing with a particular penalty or sentencing procedure it expressly named the statute to be so repealed or amended. Those statutes dealing with the same procedures but which were not mentioned thus remain in effect. With regard to suspension of sentences and probation no specific statutes authorizing suspensions and probation were named. Thus Congress evidenced an intent to repeal or amend all statutes bearing upon these procedures.

■ Respondent points out that the Federal Youth Corrections Act was under study for approximately ten years prior to its enactment in 1950. Reports of that study reveal that the purpose of Congress in passing that act was to make available for the discretionary use of federal judges a system for the sentencing and treatment of youth offenders by permitting the substitution of correctional rehabilitation rather than retributive punishment. This is made clear not only by the language of that act but also by its legislative history.[5]

But the more specific aims towards which Congress directed later legislative efforts led it to modify the means originally provided to effectuate the broad youth corrections system. In 1950 Congress was not primarily concerned with narcotics traffic; in 1956 it was. It is the 1956 act construed with reference to its legislative history which governs the scope to be given section 7237(d)—not what Congress was thinking and doing without specific reference to the narcotics problem six years earlier.

With regard to other offenses not referred to in section 7237(d), the provisions designed to effectuate the broad purposes of Congress in enacting the Federal Youth Corrections Act remain in full force today. See Cunningham v. United States, 5 Cir., 256 F.2d 467. As stated earlier in this opinion, even with regard to offenses dealt with in section 7237(d), all procedures of the Federal Youth Corrections Act except those relating to suspension and probation by the trial judge remain in effect. Thus it can hardly be said that section 7237(d) operates to undermine the fundamental objectives of the Federal Youth Corrections Act.

Our attention has been directed to section 4 of Public Law 85–752 (85th Cong., 2d Sess.), 72 Stat. 846, codified as 18 U.S.C.A. § 4209, enacted in 1958. Under this section district courts are authorized in exceptional cases to sentence under the provisions of the Federal Youth Corrections Act defendants who are between the ages of twenty-two and twenty-six at the time of conviction. Section 7 of Public Law 85–752 provides that the act does not apply to any offense for which a mandatory penalty is provided by statute.

Since under the 1958 act the mandatory penalty exception is made to apply only to persons in the twenty-two to twenty-six-year age group, it is argued that no such exception was intended to preclude treatment under section 5010(a) of the younger age group in which Helen Mae Lane falls.

This argument, it seems to us, overlooks the fact that the mandatory penalty exception in the 1958 act was intended to make the Youth Corrections Act wholly inapplicable with regard to the twenty-two to twenty-six-year age group where an offense involved a mandatory penalty.

5. See Report of the Committee on the Judiciary to accompany S. 2609, House Rep. No. 2979, vol. 2, U.S.Code Cong. Serv. 1950, 81st Cong., 2d Sess., p. 3985, reading in part:
"Under its provisions, if the court finds that a youth offender does not need treatment, it may suspend the imposition or execution of sentence and place the youth offender on probation. Thus, the power of the court to grant probation is left undisturbed by the bill."

But Congress has never had that intention with regard to the younger age group. Section 7237(d) does not make the Federal Youth Corrections Act wholly inapplicable in cases of narcotics violations. It only withdraws as to such offenses the authority to suspend sentences and grant probation, leaving intact, as stated above, all other provisions of the act. Hence the failure of Congress to include the younger age group in the mandatory penalty exception of the 1958 act seems to us to be irrelevant to our present problem.

For the reasons stated above it is ordered that a writ of mandamus issue directing that the district court correct the sentence in the respects referred to in this opinion. The appeals are dismissed.