**UNITED STATES, Petitioner,**

v.

**The Honorable Leonard BRAMAN, Respondent.**

No. 8719.

District of Columbia Court of Appeals.

Argued Oct. 10, 1974.

Decided Oct. 18, 1974.

Rehearing and Rehearing en Banc
Denied Dec. 11, 1974.

Earl J. Silbert, U. S. Atty., with Carl S. Rauh, Henry F. Greene, John A. Terry, A. Shuker, John F. Evans, Percy H. Russell, Jr., Hetherton and David R. Addis, Asst. U. S. Attys., were on the petition, for petitioner.

Peter Weisman, Washington, D. C., was on the statement of respondent in response to the petition.

Charles W. Daniels was on the answer to the petition for John Griffin.

Before KERN and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

This case comes to us on a petition for a writ of mandamus by the government following the grant of a new trial to one of the defendants in a murder conspiracy case on grounds which the government asserts were not raised by that defendant's new trial motion. After review of the record before us we conclude the trial court's action was the grant of a new trial on grounds of prejudicial joinder, a nonappealable order and beyond our reach at this time unless, as the government contends, the court did not have jurisdiction so to act.

Preliminarily, we note that it is only in very exceptional circumstances that there will be justification for the invocation of the extraordinary remedy of mandamus against a trial court.[1] In order for such a writ to issue, the party seeking it must show that its right to the issuance of the writ is "clear and undisputable."[2] In the

---

1. United States v. Green, 134 U.S.App.D.C. 278, 414 F.2d 1174 (1969).

2. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 /1967).

There, the Circuit Court of Appeals issued a writ of mandamus to the District Court judge to vacate a portion of his pretrial order for a bill of particulars in a criminal case. The Supreme Court observed preliminarily that:

instant case, however, the government contends that it is beyond doubt that the respondent trial judge was without jurisdiction to enter the order it challenges here and hence mandamus must issue. We proceed to an examination of the record with that contention in mind.

In discussing defendant Griffin's motion for judgment notwithstanding the verdict or, alternatively, for a new trial[3] made after the jury returned a guilty verdict, the trial court said that the government's case against him "was, when considered with the extensive evidence making up the entire fabric of the conspiracy, and its execution, sufficient to require me as trial judge to deny Mr. Griffin's motion for judgment of acquittal. But that does not discharge my responsibilities as the 13th juror to appraise and weigh the evidence on both sides." Continuing his review of the evidence the trial judge stated:

> Viewing both sides of the evidentiary scales . . . the court cannot say that the verdicts against Mr. Griffin were contrary to the great weight of the evidence. Nevertheless the evidentiary question was close. In short, this

is the kind of case where the verdicts would ordinarily not be disturbed. From the fact finding point of view, it is a typical case for jury resolution.

From these remarks we conclude the court did not find the arguments in defendant's motion for a new trial grounded on insufficiency of the evidence and the prejudicial impact of an impassioned outburst in open court by a government witness to be well taken and was rejecting them. But having thus for all intents and purposes denied the new trial motion the court added:

> There is more, however, to be considered. . . . Specifically, the evidentiary scales being so delicately poised in Griffin's case there must be no doubt that the jury was able to weigh the balance without prejudicial extraneous influence.

> In Griffin's case, however, the scales may have been tilted by the reflected weight of the mass of evidence against his codefendants Messrs. Clark, Moody and Christian.

.    .    .    .    .    .

"The peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its . . . authority when it is its duty to do so.' Roche v. Evaporated Milk Assn, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)." Continuing, the Supreme Court said: "While the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction', it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy. De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)." The Court noted that it had "never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal" and pointed out that the government was not contending that the trial court was without jurisdiction to enter the disputed order.

3. Defendant's motion read:
    "1. The verdict returned in this cause rested only upon conjecture and speculation, the

government failing to negate reasonable inferences consistent with innocence with respect to defendant's flight.
    "2. The jury gave impermissive weight to identification testimony of Amina Khaalis, the court having previously ruled at the conclusion of the identification hearings and this cause that it had serious question with respect to the independent source for Ms. Khaalis' identification of defendant John Griffin.
    "3. The jury should not have been permitted to conjecture merely or to conclude upon pure speculation or from passion, prejudice or sympathy.
    "4. The in court and in the presence of the jury outburst of Mr. Hamas Khaalis created such an aura of bias, prejudice, sensationalism and passion such as to render impossible for the defendant to be afforded a fair and impartial trial.
    "5. And for such other reasons as may be pointed out in the argument, points and authorities attached hereto and further oral argument to be heard on this motion."

Accordingly the judicial conscience cannot, with equanimity, affirm that the jury's resolution of Griffin's fact issues was free of a bandwagon effect.

.    .    .    .    .    .

I also want to take the opportunity to explicate that in the case of each of the defendants, I have gauged the risk of prejudice from a joint trial and have monitored it continuously through the trial. . . .

.    .    .    .    .    .

I find that Mr. Griffin's case is not a case where the court can state that the jury properly weighed the evidence applicable against Mr. Griffin free of extraneous influence that may have been improper.

Some weeks later, while discussing with counsel the forthcoming second trial [Tr. at 12, 13, Aug.. 13, 1974], the court explained that "this court granted Mr. Griffin a severance because there was more than inequality insofar as the burden of incriminatory evidence was concerned."

The court therefore, while holding that it "cannot say that the verdicts against Mr. Griffin were contrary to the great weight of the evidence", granted defendant Griffin's motion for a new trial on the ground of prejudicial joinder of defendants.

We note the statement respondent trial judge filed in the proceeding before us: "In granting Griffin's motion for a new trial, this respondent perceived the question of prejudice vel non by joinder, a theme stressed at the very outset of the proceeding below and reserved for continuous scrutiny as the circumstances of the trial unfolded, to be within the fair intendment of Griffin's motion for a new trial." (Footnote omitted.)

The footnote we have omitted referred to certain pages of the transcript taken from the proceedings for October 29, 1973, February 21, 1974, and the session of July 9, 1974, held for post-trial motions and sentencing which we discuss hereinafter.

At the proceedings of October 29, 1973, motions for severance were under consideration including one as to defendant Griffin. The court expressed some understanding, if not sympathy, for the contentions of counsel for the defendants but observed that without a crystal ball it could not be foreseen how the evidence might develop and asked "why don't we wait to see what does evolve?" The court denied the motions "without prejudice to their being renewed as may be deemed appropriate." We do not find from the record pages supplied to us that the question was "reserved for continuous scrutiny" although that may well have been the intent of the court.

Transcript pages 616 and 617 of February 21, 1974, relied upon by the trial court, reflect that counsel were discussing with the court motions that were still pending, including motions for severance as to defendants Price, Sinclair and Clark. Those pages do *not* indicate that defendant Griffin had renewed his motion for severance. When the court at that point recognized counsel for defendant Griffin, he did not continue the discussion regarding severance but instead raised a different point, viz., the question whether the defendants should be present. At transcript page 10,989 for May 8, 1974, when the court and counsel were discussing matters preliminary to the making of closing arguments, the court indicated that a motion to sever had been made in behalf of defendant Griffin, "should Mr. Christian be permitted to argue his part of the case in proper person." Thereupon Griffin's counsel stated: "At this point, with your Honor's permission, I respectfully ask leave to withdraw my motion to sever." The court responded: "I will rule on Friday, at the time that we settle instructions, and on the entitlement of the defendants to argue or participate in final argument."

After verdict the defendants were granted three weeks to file post-verdict motions. [Tr. at 24, May 17, 1974.] When Mr. Shuker, counsel for the government, was

arguing a motion as to the felony—murder count—the court interrupted and the following colloquy ensued:

> THE COURT: Mr. Shuker, the defendants also rely upon the claimed error involving a failure to sever.
>
> MR. SHUKER: Defendants, Your Honor?
>
> THE COURT: The defendants do.
>
> MR. SHUKER: I mean, to sever defendants or to sever counts?
>
> THE COURT: To sever the defendants. And I believe that's incorporated by reference.
>
> MR. SHUKER: If it is incorporated by reference, Your Honor, I must confess I found it exceedingly oblique. I have no memory of it at this moment.

The above exchange seems to us a clear indication that the government did not understand the motion for severance as to Griffin was still pending. The government urges in support of its petition that it strongly disagrees with the court's finding of prejudicial joinder and, had it realized what was at issue, could have in argument directed the court's attention to counteravailing evidence. Whether or not the government is correct it certainly was entitled to the opportunity to present its views on this important issue.

In sum, we have not been provided with any transcript pages indicating that defendant Griffin renewed his motion for severance, other than the implication at the hearing of May 8, 1974, that he may have when he specifically withdrew his motion for severance as mentioned, *supra*. Neither are we provided any transcript pages regarding any argument Griffin's counsel may have made to the court on such a motion. We cannot ignore the likelihood that his counsel, after all the evidence was in, withdrew his motion for severance as a matter of trial strategy. Counsel may well have viewed the evidence against his client as being sufficiently thin to warrant the taking of a chance on a jury verdict of not guilty rather than pursuing a motion for severance and the risks of another trial and another jury.

■ Although no motion for severance on behalf of Griffin was pending when the court ruled on his motion for a new trial and although it did not agree with any of defendant's arguments for a new trial, the court nevertheless did hold that in its view there had been a misjoinder and ordered a new trial. This ruling was made well after the time had expired for the making of a new trial motion. Under Super.Ct.Cr.R. 33, as amended in 1966,[4] a trial court cannot grant a new trial sua sponte.

That leaves for our consideration whether the trial court had jurisdiction from some other source to order severance after verdict and when the defendant, apparently as a matter of trial tactic, had asked earlier that his motion be withdrawn.

Super.Ct.Cr.R. 14 deals with severance and is prospective in its wording. It provides in pertinent part: "If it appears that a defendant . . . is prejudiced by a joinder . . . the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . . [T]he court may order the prosecutor to deliver to the court for inspection in camera any statements or confessions made by the defendants which

---

4. The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

the government intends to introduce in evidence at the trial."

The American Bar Association's Standards for Criminal Justice provide in the chapter on Joinder and Severance, Part II, § 2.1, p. 167 that: "A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known. Severance is waived if the motion is not made at the appropriate time." Section 2.1(b), p. 167, provides: "If the defendant's pretrial motion for severance was overruled, he may renew the motion *on the same* grounds before or at the close of all of the evidence. Severance is waived by failure to renew the motion." [Emphasis supplied.] Accordingly, it is not clear that granting a motion for severance after verdict is proper, but we need not resolve that problem here.[5] The trial court ruled that it was granting the motion for a new trial. We therefore return to our consideration of the nature of the court's ruling on that motion. We would observe, however, that since the granting of a severance in midtrial or post verdict almost always amounts to a granting of a new trial, it would seriously undermine the purposes of the 1966 Amendments to Rule 33 governing new trial motions if we were to hold that the rule does not apply to asserted prejudicial joinders.

In United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), a trial judge had granted a new trial sua sponte, and well after the five-day period following verdict, which was the time limitation of the Rule prior to its amendment in 1966. It was argued that, although the time restriction applied to the defendant, it "permits the judge to order retrial without request at any time." The Supreme Court noted that if power to grant a new trial at any time is not conditioned on an appropriate request of the defendant "serious constitutional issues would be raised. For it is such request which obviates any later objection the defendant might make on the ground of double jeopardy." Without deciding the jeopardy question the Court said: "We think that expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can be properly granted on the court's own initiative." *Id.* at 475, 67 S.Ct. at 1333.

Accordingly, the amendment to Federal Rule 33 in 1966 not only extended the time limitation from five to seven days but specifically provided that a new trial may be granted only "on motion of a defendant." The purpose of the amendment, according to a note of the Advisory Committee of the Judicial Conference of the U.S., is to "make it clear that a judge has no power to order a new trial on his own motion, that he can act only in response to a motion timely made by a defendant." See 18 U.S.C. Rule 33 Supp.1961–70, Notes of Advisory Committee on Rules. Lacking such a motion the trial court "had no power to order a new trial, and the action [was] a nullity." United States v. Green, 134 U.S. App.D.C. 278, 279, 414 F.2d 1174, 1175 (1969); United States v. Vanterpool, 377 F.2d 32 (2nd Cir. 1967).

Since we find nothing in defendant's motion for a new trial raising the question of severance or otherwise suggesting he was improperly joined with named codefendants we must necessarily view respondent's order for a new trial on the ground of prejudicial joinder to have been an ac-

---

5. Defendant Griffin refers us to United States v. Decker, 51 F.Supp. 20 (D.C.Md.1943), aff'd 140 F.2d 375 (4th Cir. 1944), cert. denied, 321 U.S. 792, 64 S.Ct. 791, 88 L.Ed. 1082 (1944), but that decision by a federal district court was rendered *after* request by the defendant and *before* the 1966 amendment to Rule 33. United States v. Wilson, 140 U.S.App.D.C. 220, 434 F.2d 494 (1970), cited to us for the proposition that a trial court should order a severance, even if no motion is made, when circumstances warrant it, states that after verdict such grounds should be raised by a motion for new trial. *See* United States v. Wilson, *supra*, n. 12.

tion taken sua sponte, for his own reasons. Although the trial judge acted with the diligence and care that characterized his conduct of the complex and protracted trial and upon how he then viewed the case, his order was not responsive to the motion and, under the rule, was beyond his power at the time.

Petitioner here has laid great emphasis on the case of United States v. Newman, 456 F.2d 668 (3rd Cir. 1972), contending it controls the instant case. Respondent correctly points out that in that case the trial court stated specifically that "the points urged by defendant in support of a new trial are without merit" and then went on to grant a new trial on a different ground. The court here did not expressly state that it found no merit in the points urged in the motion.

In his formal order the trial judge said that "upon consideration of the motion . . . the opposition thereto, and oral argument . . . and *for the reasons stated in open court* on that date, it is . . . ordered that so much of the motion as seeks a new trial is granted." The stated reasons referred to are set forth in pertinent part, *supra,* after the court's introductory words to that part of its discussion that "[t]here is more, however, to be considered."

As we have indicated his reasons included references to such matters as "the scales may have been tilted by the reflected weight of the mass of evidence against his codefendants"; doubt that the jury's resolution "was free of a bandwagon effect"; and the observation that he has "gauged the risk of prejudice from a joint trial and [has] monitored it continuously" all reveal his concern was for a prejudicial joinder so that he could not "state that the jury properly weighed the evidence applicable against Mr. Griffin free of extraneous influence that may have been improper." This cannot be viewed as a strained construction of what the court said for respondent later, on August 13, 1974, characterized that action as a "severance".

Since no motion for a severance was pending for the court's consideration and the motion for a new trial made no reference to codefendants, prejudicial joinder or severance, we are constrained to conclude that the new trial was granted sua sponte for reasons not asserted by defendant who, as we have seen, specifically requested the court to withdraw his motion for severance.

We find ourselves therefore in the same situation as the Circuit Court of Appeals in United States v. Newman, *supra,* and for the reasons stated there hold that the ruling of the trial court granting the motion for a new trial on grounds not asserted in defendant's motion "but articulated sua sponte by the trial court, is action by the court 'on its own motion,' and, being beyond the jurisdiction of the court, is ineffective." United States v. Newman, *supra,* at 672.

Since for the reasons stated above the court's order of July 9, 1974, in this case is a nullity, the trial judge should proceed with sentencing so that defendant may, if he chooses, pursue an appeal from the judgment of conviction raising such issues as he deems appropriate. With this disposition of the case, we find it unnecessary to decide the petition for writ of mandamus. *See* United States v. Green, *supra,* 134 U.S.App.D.C. at 279 n. 3, 414 F.2d 1174.

The Clerk shall transmit a certified copy of this opinion forthwith.

So ordered.