**UNITED STATES, Petitioner,**

**v.**

**The Honorable H. Carl MOULTRIE, Associate Judge, Superior Court of the District of Columbia, Respondent.**

**No. 9488.**

District of Columbia Court of Appeals.

Argued May 9, 1975.

Decided June 11, 1975.

Rehearing En Banc Denied July 17 and Oct. 2, 1975.

Warren R. King, Asst. U.S. Atty., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Charles F. Flynn, Asst. U.S. Attys., were on the petition, for petitioner.

Wiley A. Branton, Washington, D.C., for respondent. Clifford P. Brown, Washington, D.C., appointed by this court, for John E. Clark, potential defendant.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

We are asked by the government to mandate vacation of respondent's order quashing a grand jury subpoena duces tecum. The subpoena was issued in connection with presentation of a murder case to the grand jury. It sought employment time and attendance records respecting the suspect and other employees for a certain six-day period bridging the day of the killing. The suspect, one John E. Clark, has caused the records for the day of the murder to be in the possession of his attorney who successfully moved to quash the subpoena.

■ We view the issue presented for our consideration to be the following. Did the trial court have power to limit the investigation of a grand jury by quashing a subpoena duces tecum where the materials sought were not privileged and where the production of materials was not "unreasonable or oppressive" as contemplated by Super.Ct.Cr.R. 17(c)? Viewing the issue thus, it is unnecessary to treat at length, if at all, respondent's effort to fit his action within the general holding of *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L. Ed.2d 305 (1967). It is not enough to say that the court has power to quash a grand jury subpoena; thus, mandamus may not issue due to initial subject matter jurisdiction. The issue is power—qua jurisdiction —to quash for the reason given. While a

merely erroneous ruling will not justify mandamus (*Will v. United States, supra* at 98 n.6, 88 S.Ct. 269, an error of this kind, intruding as it does on the grand jury process, is in a unique status.

■ In its opinion, the trial court correctly rejected arguments by the suspect that the employment time logs were protected work-product under the rule in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), or that they were privileged attorney-client communications. The court also correctly rejected the contention that the suspect could avoid compliance because of his privilege against self-incrimination, where the records were prepared in the ordinary course of business by the employer of the suspect and were not "personally possessed" by the suspect. Instead, however, the court held that the grand jury subpoena process had been abused, and it quashed the subpoena on that ground.

The court's reasoning took the following path. Although a presumption of regularity attaches to a grand jury subpoena, once a party merely alleges irregularity, the onus shifts to the government to make a "minimum showing of the existence of a proper purpose." The government failed to respond specifically[1] to the allegation of the suspect that the subpoena was an attempt by the government to "circumvent the rules of discovery" and thereby abuse the grand jury subpoena process. Such lack of response, inferred the court, served to render the government's action suspect. Since the evidence sought was not "itself . . . evidence of a crime" (the court cited as an example a blood-stained glove), and since the government "openly admitted" that the grand jury already had "oral evidence as to what the entry reflects", the evidence was not of a sort "needed" by the grand jury in deciding whether to indict, there being other adequate showing of probable cause. Consequently, the court

---

[1]. The government, reported the court in its opinion, merely stated that the grand jury

was empowered to subpoena all documents needed for a "full investigation of the case."

reasoned that the government was really using the grand jury subpoena as a device to obtain evidence which it could otherwise obtain only under the reciprocal provisions of the post-indictment discovery rules. This attempt, concluded the court, constituted an abuse of the grand jury subpoena power and under the circumstances rendered the subpoena "unreasonable and oppressive."

■ We find these aspects of the court's analysis to be flawed. First of all, although correctly acknowledging that a presumption of regularity attaches to a grand jury subpoena, the court appears to have impugned an unlawful motive to the government largely from its asserted failure to respond to a mere allegation of impropriety. The presumption of regularity is not so easily erased. In *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 92 (3d Cir.1973) (relied upon by the trial judge), it was said:

> [W]e recognize that . . . a presumption of regularity attaches to the grand jury's proceedings, and hence to a grand jury subpoena. . . . Given that presumption, the party objecting to enforcement has the burden of making some showing of irregularity. . . . [Citations omitted.]

A mere allegation is not a sufficient "showing" to cancel the presumption of regularity. Consequently, the characterization of the government's response (*see* note 1, *supra*) or lack thereof as revealing an improper purpose was unfounded.

■ Secondly, the court cited no authority, and we know of none, which holds that the "need" of the grand jury to consider evidence which directly relates to the whereabouts of a suspect at the time of a crime is somehow less compelling than the "need" to examine evidence which is "itself . . . evidence of a crime." Where lies the distinction? The burden here remained on the suspect to establish that the documents had "no conceivable

relevance to any legitimate object of investigation by the . . . grand jury." *In re Horowitz*, 482 F.2d 72, 80 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

■ Thirdly, the fact that oral evidence of the contents of the records was available to the grand jury is irrelevant. Even if by the court's measure the grand jury had "enough" evidence, without considering the logs, to return an indictment, it was entitled to subpoena the logs. A grand jury does not have to "cease its investigation [once] it has adduced enough evidence to secure an indictment . . . .. It may well develop upon further investigation that others are involved or that those first suspected have . . . proof which absolve[s] them." *United States v. Sweig*, 441 F.2d 114, 121 (2d Cir.1971). A trial court may not titrate the evidence sought by a grand jury to an amount it deems sufficient for an indictment. *Cf. United States v. Washington*, D.C.App., 328 A.2d 98 (1974). In the instant case, the records might have revealed that the suspect was reported at work at the time of the offense, that he was absent from work, or that someone (himself or another) had tampered with the records suggesting to the grand jury the possible participation of an accessory after the fact. All such information would be eminently proper for grand jury consideration. The grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950). The mere observation by the trial court that a grand jury "may" indict on the basis of hearsay and does not necessarily "need" to consider the "best evidence" certainly should not have led to the conclusion that a choice by the grand jury to exercise its legitimate prerogative to examine the documentary evidence was prompted by an ulterior and improper motive.

More important, however, is the court's fundamental misconception of its power to control[2] the grand jury, and it is the resulting usurpation of power which concerns this court. The court in *United States v. United States District Court*, 238 F.2d 713 (4th Cir.1956), *cert. denied*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957), in condemning the trial court's quashing of a grand jury subpoena, stated, at 722, the following with which we agree:

> While the grand jury is summoned, empaneled and sworn by the court, it is essentially independent of court control. . . . The grand jury acts as an independent body. While the judge has the supervisory duty to see that its process is not abused or used for purposes of oppression or injustice (In re National Window Glass Workers, D.C., 287 F. 219, 225), there should be no curtailment of its inquisitorial power *except in the clearest cases of abuse.* . . . [Emphasis supplied.]

*See also Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). No such clear showing of abuse was made in the instant case.

▆▆▆▆ The court did include a finding in its opinion to the effect that compliance with the subpoena would be "unreasonable and oppressive." While Super.Ct.Cr.R. 17(c) empowers the court to quash a subpoena on this ground, that rule (the counterpart of Fed.R.Crim.P. 17(c) normally contemplates the quashing of a subpoena on Fourth Amendment grounds because it seeks materials excessive in number, covering an unreasonably long time interval, or unreasonably difficult to obtain. *See Unit-*

ed States v. Gurule*, 437 F.2d 239 (10th Cir.1970). *See also* 8 J. Moore, Federal Practice ¶ 17.07 (2d ed. 1974). The materiality of the documents sought may also be a consideration under Rule 17(c). *See United States v. United States District Court, supra.* Certainly, in the instant case the materiality of the subpoenaed documents is unquestionable, and it is clear that compliance with a request for a week's worth of records is not the sort of burden which courts have found to be "unreasonable or oppressive." *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *In re United Shoe Machinery Corp.,* 73 F.Supp. 207 (D.C.Mass.1947); *Application of Certain Chinese Family Benevolent and District Associations,* 19 F.R.D. 97 (D.C.Cal. 1956). Thus the court's use of the language "unreasonable and oppressive" is not based upon legitimate considerations under Rule 17(c). We find that the record fails to establish any abuse by the grand jury. We therefore conclude that, under the circumstances, quashing the subpoena on this ground, thus limiting legitimate grand jury inquiry, was an act amounting to a usurpation of power. *Will v. United States, supra. Cf. United States v. Braman,* D.C. App., 327 A.2d 530 (1974).

In light of what we have said, and there being no reason to believe that respondent will not vacate the order quashing the subpoena without the pressure of a writ of mandamus, we refrain from issuing such process. The clerk will, in lieu thereof, transmit a certified copy of this opinion to respondent.

*So ordered.*

---

**2.** The court exercises no prior control upon the use of the grand jury subpoena. The court is, however, empowered to determine whether it will compel compliance once the subpoena is issued. Thus the enforcement power lies with the court, and the court may excuse compliance by granting a motion to quash on the basis of various defenses, both

constitutional and non-constitutional. *In re Grand Jury Proceedings (Schofield), supra* at 91–92. None of the defenses discussed in the above case authorizes the sort of judicial intrusion with the legitimate investigation of the grand jury which the trial court here exercised.