**UNITED STATES, Appellant,**

v.

**Louis J. STOKES, Jr., a/k/a Phillip L. Willis, Appellee.**

**No. 10159.**

District of Columbia Court of Appeals.

Argued May 11, 1976.

Decided Oct. 21, 1976.

Bernard J. Panetta, II, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Charles E. Wagner, Joseph B. Valder and David R. Addis, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellant.

Fred C. Timberlake, Washington, D.C., appointed by the court, for appellee.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

KELLY, Associate Judge:

The government here appeals the imposition of a sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (Youth Act), upon appellee Stokes following his conviction of first-degree felony murder, D.C.Code 1973, § 22–2401.[1] Appellee's convictions of first-degree felony murder, second-degree murder armed robbery and carrying a pistol without a license,[2] stemmed from his participation in a supermarket robbery during which he shot and killed store clerk Harry Bronfin. Concurrent sentences under the Youth Act ranging up to twenty-three years were imposed with a recommendation by the trial judge that appellee be incarcerated a minimum of four years.[3] The issue presented for review, aside from the question of this court's jurisdiction, is whether by reason of the mandatory language of D.C.Code 1973, § 22–2404[4] a trial judge lacks discretion to sentence an individual convicted of first-degree murder under the Youth Act.[5]

I

There must be an initial determination whether the government may appeal a

---

1. The Youth Act was amended in 1967 to extend its coverage to offenses applicable exclusively to the District of Columbia. Act of Dec. 27, 1967, Pub.L.No.90–226, title VIII, § 801(a), 81 Stat. 741, *amending* 18 U.S.C. § 5024 (1964).

2. *See* D.C.Code 1973, §§ 22–2401, –2403, –2901, –3202, and –3204 respectively. The convictions were not appealed.

3. This recommendation is not binding on the Youth Correction Division which, with the concurrence of the Director of the Bureau of Prisons, may "at any time . . . release conditionally under supervision a committed youth offender." 18 U.S.C. § 5017 (a) (1970).

4. This statute, enacted in 1962, provides that should the jury be unable to agree on the punishment of an individual convicted of first-degree murder, the court "shall impose either a sentence of death by electrocution or life

imprisonment." The statute provides further: "Notwithstanding any other provision of law, a person convicted of first degree murder and upon whom a sentence of life imprisonment is imposed shall be eligible for parole only after the expiration of twenty years from the date he commences to serve his sentence." (The death penalty provision was invalidated as a result of the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).)

5. The Act is applicable to young offenders who have been convicted of an "offense . . . punishable by imprisonment," 18 U.S.C. § 5010(b) (1970), before reaching the age of twenty-two. 18 U.S.C. § 5006(e) (1970). It authorizes a trial judge, among other things, to suspend the imposition or execution of sentence and place a convicted youth offender on probation. 18 U.S.C. § 5010(a) (1970).

sentencing order pursuant to D.C.Code 1973, § 11–721(a)(1),[6] which gives this court jurisdiction of appeals from "all final orders and judgments of the Superior Court of the District of Columbia."[7] As a point of departure, we note that in *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957), the Supreme Court stated: "[A]ppeals by the Government in criminal cases are something unusual, exceptional, not favored. . . ." It held that absent express statutory authority, the government may only appeal those adverse decisions which either terminate a prosecution or "possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders . . . ." *Id.* at 403, 77 S.Ct. at 1338. With respect to collateral orders which are appealable by virtue of their distinctive character, the Court noted that the only criminal order which it had held appealable under this category was an order setting the amount of bail. *Ibid.,* citing *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Reference was made to earlier cases which permitted appeals of certain orders relating to the suppression or return of illegally seized property where the motion was distinct from the main course of the prosecution because it was made prior to indictment, or in a different district from that in which the trial occurred, or after dismissal of the case, or where the emphasis of the motion was on the return of property rather than the suppression of evidence. *Id.,* 354 U.S. at 403, 404, 77 S.Ct. 1332.

▮ A sentencing order, of course, has none of the independent characteristics noted above. Representing as it does the culmination of a successful prosecution, it can be regarded neither as independent of that prosecution nor as terminating the prosecution for purposes of ascertaining its appealability by the government. *Accord, United States v. Lane*, 284 F.2d 935, 938 (9th Cir. 1960). Therefore, acceding to the government's alternative request,[8] we proceed to the merits of this appeal by regarding the government's brief as a petition for a writ of mandamus, a recognized means of reviewing an allegedly unauthorized sentence. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Lane, supra. See also United States v. Braman*, D.C.App., 327 A.2d 530 (1974).

## II

▮ In *United States v. Howard*, 146 U.S.App.D.C. 10, 449 F.2d 1086 (1971), faced with the precise question before us, the United States Circuit Court concluded that an individual convicted of first-degree felony murder before reaching age twenty-two was eligible to receive a Youth Act sentence.[9] While, as the government notes, this decision is not binding on this court, *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971), we nevertheless believe that *Howard* was correctly decided and accordingly reach the same result.

As noted above, Congress in 1962 provided that first-degree murder in the District of Columbia be punishable by death or life imprisonment. D.C.Code 1973, § 22–2404. The government argues forcefully that having taken this step, Congress could not have intended to extend the liberalized

---

6. In the alternative, the government has requested that we treat its brief on appeal as a petition for a writ of mandamus to correct an invalid sentence.

7. The government has no specific statutory authorization to appeal the imposition of a sentence. *See* D.C.Code 1973, § 23–104.

8. *See* note 6 *supra.*
▮

9. Chief Judge Harold H. Greene of the Superior Court followed the reasoning in *Howard* in deciding that those convicted of first-degree murder could be sentenced under the Youth Act. Because he found that the person in question would not benefit from such treatment, however, his eligibility determination was not reviewed on appeal. *Cambrel v. United States*, D.C.App., 330 A.2d 746, 747 n. 3 (1975).

sentencing provisions of the Youth Act[10] to this offense when in 1967 it acted to make the Act applicable to District of Columbia Code offenses.[11] Unfortunately, the legislative history of these enactments offers no guidance for the resolution of their potential conflict. But the government suggests a number of ways in which Congress may be viewed to have indirectly expressed an intent that those convicted of first-degree murder in the District be excepted from Youth Act coverage.

■ Initially, the government urges that first-degree murder should not be regarded as an "offense . . . punishable by imprisonment" for purposes of Youth Act eligibility, because at the time the Act was made applicable to District of Columbia Code offenses first-degree murder was punishable by death as well as life imprisonment.[12] In our view, however, the literal meaning of the phrase "offense . . . punishable by imprisonment" clearly embraces an offense for which life imprisonment is an alternative punishment. And in the absence of persuasive evidence to the contrary, we are not empowered to look beyond the plain meaning of a statute's language in construing legislative intent. *See Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed 170 (1928).

■ The government contends next that even assuming first-degree murder can be regarded as "offense . . . punishable by imprisonment" for purposes of Youth Act coverage, the mandatory language of D.C.Code 1973, § 22-2404 must prevail as the clearest expression of legislative intent. It argues that to allow the option of Youth Act sentencing for those convicted of first-degree murder would be tantamount to carving an exception into D.C.Code 1973, § 22-2404 unintended by

Congress. This argument, however, can be advanced with equal plausibility in support of the statutory construction the government opposes. Because, to the extent that the provisions of 18 U.S.C. § 5010(b) (1970) and D.C.Code 1973, § 22-2404 are in direct conflict, the result we reach must necessarily involve the "carving of a statutory exception" not expressly contemplated by Congress. Furthermore, the government's contention implies that had Congress intended to make Youth Act treatment available to those convicted of first-degree murder, it would have incorporated this exception into D.C.Code 1973, § 22-2404 at the time of its enactment in 1962. Congress, of course, had no reason to take into account the possibility of Youth Act sentencing for first-degree murder at that time, because, as noted *supra,* the Act was not made applicable to District of Columbia Code offenses until 1967.

We think it is more logical to assume that had Congress intended the exclusion of first-degree murder from Youth Act coverage, this intent would have been expressed at the time the provisions of the Act were fully extended to the District of Columbia. Instead, Congress merely provided: "This chapter [the Youth Act] shall apply . . . in the District of Columbia." 18 U.S.C. § 5024.

In one instance where it has been the intent of Congress to limit the scope of a statute which afforded a liberalized sentencing alternative, the limitation has been expressly provided in the statutory language. This statute, 18 U.S.C. § 4209, enacted in 1958, makes Youth Act treatment available to "young adult offenders" ages twenty-two through twenty-five. The Act by its terms "[does] not apply to any offense for which there is provided a mandatory penalty."[13]

10. *See* notes 3 & 5 *supra.*

11. *See* note 1 *supra.*

12. *See* note 4 *supra.*

13. The government points out that 18 U.S.C. § 4209 has never been made applicable to District of Columbia Code offenses. The fact remains, however, that Congress' determination to exclude a category of offenses from the

The government relies on *United States v. Lane,* 284 F.2d 935 (9th Cir. 1960), to support its contention that Congress' intent may be apparent, and thus controlling, even though not specifically expressed. In *Lane,* the court held that an individual convicted of a narcotics offense[14] before reaching the age of twenty-two was nevertheless ineligible to receive a suspended sentence pursuant to 18 U.S.C. § 5010(a) because of the mandatory sentencing provisions[15] applicable to this offense. It noted that there was "solid support" in the legislative history of the statute in question for the conclusion that its enactment effected an implicit repeal of 18 U.S.C. § 5010(a) with respect to the sentencing of certain narcotics offenders. *Id.* at 940. The court quoted a congressional committee report which stated that the legislation was specifically aimed at deterring the recruitment of young persons as narcotics couriers. *Ibid.* By contrast, as noted above, we find no such direct evidence of congressional intent to exclude young offenders convicted of first-degree murder from coverage under the Youth Act.

■ Finding the provisions of D.C. Code 1973, § 22–2404 and 18 U.S.C. § 5010(b) to be in direct conflict with respect to the sentencing of young offenders convicted of first-degree murder, we are compelled to adopt a construction of these

statutes which imposes the more lenient punishment. *Bell v. United States,* 349 U. S. 81, 83, 75 S.Ct. 620, 99 L.Ed 905 (1955) ; *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 97 L.Ed 260 (1952) ; *United States v. Howard, supra,* 146 U.S.App.D.C. at 19, 449 F.2d at 1095 (MacKinnon, J., concurring). Our position is not unlike that of the Supreme Court in *Bell v. United States, supra,* where the Court concluded:

> It is not to be denied that argumentative skill, . . . could persuasively and not unreasonably reach either of the conflicting constructions. . . . When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. [*Id.* 349 U.S. at 83, 75 S.Ct. at 622.][16]

■ In reaching our conclusion, we have been mindful of Congress' broad remedial purpose in affording certain young offenders the opportunity for rehabilitation under the Youth Act. *United States v. Waters,* 141 U.S.App.D.C. 289, 291, 437 F. 2d 722, 724 (1970). The extension of the Act to District of Columbia Code offenses in 1967 presumably was motivated by the same concerns that prompted original passage of the Act in 1950. In the absence of persuasive evidence of legislative intent to

---

benefits of a liberalized sentencing statute was expressed in the language of that statute, making it reasonable to assume that the same practice would be followed with respect to subsequent amendments of a closely-related statute (*i. e.,* the Youth Act). *United States v. Howard, supra,* 146 U.S.App.D.C. at 16, 17, 449 F.2d at 1092, 1093.

14. Narcotic Drugs Import and Export Act of 1956, ch. 629, title I, § 105, 70 Stat. 570 (now 21 U.S.C. § 801 *et seq.*).

15. *Id.* § 103(d), 70 Stat. 569.

16. Generally, in the case of a statutory conflict, the specific provisions of an enactment will be held to predominate over a statute of general applicability. *Rodgers v. United States,* 185 U.S. 83, 87, 22 S.Ct. 582, 46 L. Ed. 816 (1902). The government urges

that the sentencing provisions of D.C.Code 1973, § 22–2404, which concern a single offense should preclude application of the Youth Act which applies generally to criminal offenses "punishable by imprisonment." It also could be argued, however, that with respect to the narrow issue before us the Youth Act could be regarded as the more specific of the two enactments. The Youth Act confers a liberalized sentencing alternative on a specific class of offenders, while D.C.Code 1973, § 22–2404 applies in general to those convicted of first-degree murder. In any event, the canons of statutory construction "are not rules of law but merely axioms of experience. . . ." *United States v. Universal C.I.T. Credit Corp., supra,* 344 U.S. at 221, 73 S.Ct. at 229, citing *Boston Sand & Gravel Co. v. United States, supra,* 278 U.S. at 48, 49 S.Ct. 52.

the contrary, we would not be justified in thwarting this legislative design with respect to a single offense. *See United States v. Howard, supra,* 146 U.S.App.D.C. at 16, 449 F.2d at 1092.

Accordingly, the petition for writ of mandamus is denied.

*So ordered.*

NEBEKER, Associate Judge (dissenting):

One cannot but be left to ask: How and by what good reason can the extant statutory command—"Notwithstanding any other provisions of law"—be rendered meaningless? The dissent by Judge Robb in *United States v. Howard,* 146 U.S.App.D. C. 10, 20, 449 F.2d 1086, 1096 (1971), is, in my view, not merely persuasive but compelling. I subscribe to it and, accordingly, dissent here. In so doing, I add that the affected "conflict" between the two statutes (D.C.Code 1973, § 22–2404, and 18 U.S.C. § 5010(b)) is in reality a device to catch hold of the tail of the rule of lenity and drag it into first-degree murder cases. Such crimes are recognized as among the most heinous in civilized society. If there is ever a need for punishment to serve all of its recognized purposes that need is in first-degree murder cases, and I believe that the Congress has so spoken.

Sometimes I fear that judges may be prone to view all criminal acts recited in testimony or records as mere statistics on the altar of social conflict. Here, a human being died at the hands of a premeditating and deliberating killer. Yet we tell the community there is a sophisticated way of interpreting two statutes so as to permit a mere slap on the wrist for this offense. Before this happens, Congress—not the courts—should do some pretty specific legislating.

None of the cases cited by the majority here or in *Howard* for application of the rule of lenity are authority for its application to a question on the effect, if any, of one statute on another. Those cases are all consecutive punishment-separate offense cases.

But there is more. By way of astounding legerdemain, the majority brushes aside the government's reliance on *United States v. Lane,* 284 F.2d 935 (9th Cir. 1960), and in so doing turns the law respecting repeal by implication on its head. Since the rule of lenity has no place in this case, I submit the majority has really hidden behind that label in applying the unfavored notion of repeal by implication to § 22–2404—and in a most curious way. *Lane,* the majority says, noted " 'solid support' in the legislative history of the statute in question for the conclusion that its enactment effected an implicit repeal of 18 U.S.C. § 5010(a)". It is then concluded that there is "no such direct evidence of Congressional intent to *exclude young offenders convicted of first-degree murder from coverage under the Youth [Corrections] Act."* (Emphasis supplied.) How the result follows from this reasoning, I cannot say, but without any basis whatsoever, section 22–2404 by judicial fiat has had excised from it the clear language—"Notwithstanding any other provision of law"—and it was done on a basis that there is no congressional intent, one way or another, on the question whether young first-degree murderers should be excluded from the Youth Corrections Act. That intent, I submit, is found in the excised phrase of § 22–2404. A lack of expression as to intent in the Youth Corrections Act can hardly bring about implicit repeal of part of our first-degree murder punishment statute. With all respect, the reasoning of the majority here and in *Howard* is sophistry.