DISTRICT OF COLUMBIA, Appellant,

v.

Mark L. FITZGERALD, Appellee.

No. 05–CT–1428.

District of Columbia Court of Appeals.

Argued Nov. 3, 2006.

Decided Dec. 20, 2007.

Amended July 17, 2008.

Janice Y. Sheppard, for appellant.

Mark Fitzgerald, pro se.

James Klein and Jaclyn S. Frankfurt, Public Defender Service, amicus curiae, in support of appellee's petition for rehearing and rehearing en banc.

BEFORE: *WASHINGTON, Chief Judge; RUIZ, *REID, GLICKMAN, KRAMER, FISHER, BLACKBURNE–RIGSBY, and *THOMPSON, Associate Judges; **FARRELL, Associate Judge, Retired (Order).

Before WASHINGTON, Chief Judge, and REID and THOMPSON, Associate Judges (Opinion).

## O R D E R

PER CURIAM.

On consideration of appellee's petition for rehearing, appellee's petition for rehearing en banc, and the opposition thereto, and further, on consideration of the supplemental briefs filed by appellee, appellant, and the Public Defender Service as *amicus curiae* (in support of appellee), in response to this court's order dated April 9, 2008, the court enters this order amending its decision of December 20, 2007, as it appears at 939 A.2d 65 (D.C. 2007), and reissuing the opinion in amended form. It is

ORDERED by the merits division* that the petition for rehearing is granted to the extent that this court's opinion filed De-

** Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on July 1, 2008.

cember 20, 2007, (939 A.2d 65, D.C.2007), is hereby vacated. That opinion issued on December 20, 2007, is hereby amended as follows; and the amended opinion, incorporating these changes, is issued on this date.

(1) The section including the names of attorneys, bottom of the second column, at 939 A.2d 65 is modified by adding:

*James Klein* and *Jaclyn S. Frankfurt*, Public Defender Service, *amicus curiae*, in support of appellee's petition for rehearing and rehearing en banc.

(2) New footnote 1 is added after the "Amended" date of the opinion, at 939 A.2d 65, to read:

This opinion was issued originally on December 20, 2007. *See District of Columbia v. Mark L. Fitzgerald*, 939 A.2d 65 (D.C.2007). Upon consideration of Mr. Fitzgerald's post-decision petition for rehearing and the supplemental briefs relating to that petition, this opinion is being reissued in amended form. The amended opinion addresses an issue which was not raised during the original appellate proceeding, the jurisdiction of this court to hear this matter.

(3) The **ANALYSIS** section is modified after the word **ANALYSIS**, second column, at 939 A.2d 67, to read:

*Petition for Rehearing*

Following the issuance of the original decision in this case, Mr. Fitzgerald filed petitions for rehearing and rehearing *en banc*, which the District opposed. The Public Defender Service for the District of Columbia ("PDS") requested leave to enter as *amicus curiae* and to file a brief, in support of Mr. Fitzgerald's petitions. Subsequently, on April 9, 2008, we granted the request of PDS. PDS raised an issue which was not raised during Mr. Fitzgerald's original appellate proceeding, "whether this court lacks jurisdiction to adjudicate this case."[1] In our April 9, 2008, order, we permitted the parties, and *amicus* to submit supplemental briefs on the following questions: "(1) Whether this court had jurisdiction over the District government's appeal, and if not, (2) Whether this court may regard the District's brief as a petition for writ of mandamus to review [Mr. Fitzgerald's] unauthorized sentence." On May 22 and 23, the parties and *amicus* lodged briefs in response to the order.

In its supplemental brief, the District argues that "this [c]ourt has jurisdiction over a government appeal of an unauthorized sentence order," and if it does not, this court may "treat the District of Columbia's brief as a Petition for Writ of Mandamus" to "review the [trial court's] unauthorized order refusing to apply the mandatory minimum sentence" in this case. Mr. Fitzgerald argues, in essence, that the District waived its statutory authority to appeal the trial court's decision not to take into consideration his Virginia conviction in sentencing him, and therefore, this court lacks jurisdiction over the District's appeal. He further claims that mandamus is inappropriate in this case. *Amicus* contends that not only does this court lack jurisdiction over the District's appeal, but also that "this [c]ourt may not use the extraordinary writ of mandamus under the circumstances presented

1. In his original brief, responding to the District's brief on appeal, Mr. Fitzgerald did not question this court's jurisdiction to entertain the District's appeal. Rather, he asserted, in part, that the District waived its statutory right to appeal prior to sentencing. He also maintained that this court should affirm the trial court's decision to sentence him as a first time offender.

here . . . . ."[2]

In their analysis of the questions presented for consideration by this court's April 9, 2008, order, Mr. Fitzgerald and PDS insist that there is no statutory basis for a government appeal of appellee's sentence in this case, and hence, this court lacks jurisdiction to hear the District's appeal. They contend that this court's jurisdiction under D.C.Code § 11–721 is limited to orders issued under D.C.Code §§ 23–104 (which is not applicable here), or 23–111(d)(2); and that the District failed to meet the express terms of § 23–111(d)(2) with respect to its appeal.[3]

We are doubtful that this court's jurisdiction is as limited as Mr. Fitzgerald and PDS contend, as D.C.Code § 11–721(a)(1) gives this court "jurisdiction of appeals from [ ] all final orders and judgments of the Superior Court of the District of Columbia." However, we need not delve into PDS' and Mr. Fitzgerald's statutory arguments, pertaining to the alleged lack of authority for the District's appeal of Mr. Fitzgerald's sentence and this court's jurisdiction, because our case law permits us to consider the government's appellate brief as a petition for writ of mandamus. As we said in *United States v. Stokes*, 365 A.2d 615 (D.C.1976), "we proceed to the merits of this appeal by regarding the government's brief as a petition for a writ of mandamus, a recognized means of reviewing an allegedly unauthorized sentence." *Id.* at 617 (citations omitted). This practice is consistent with that followed in other jurisdictions. *See Minnesota v. Hoelzel*, 639 N.W.2d 605, 610 (Minn. 2002) (construing state's appeal as a petition for writ of mandamus where trial judge found defendant guilty of first-degree burglary but refused to enter judgment on that finding);[4] *People ex rel. Waller v. McKoski*, 195 Ill.2d 393, 254 Ill.Dec. 729, 748 N.E.2d 175, 179–80 (2001) (issuing

**2.** Mr. Fitzgerald acknowledges that his argument in his petition for rehearing differs from that presented in his original appellate brief:

> Although similar arguments [to those made in this supplemental brief] have been previously presented by the appellee as a waiver argument, with the help of PDS, the appellee's ship which was off course has been steered in the proper direction.

However, we disagree with his statement that his contention in the original appellate proceeding "was ... a jurisdictional argument."

**3.** Authority cited by PDS and Mr. Fitzgerald includes: *District of Columbia v. Whitley*, 640 A.2d 710, 712 (D.C.1994) ("[T]he government has no right of appeal in a criminal case unless there is express legislative authorization") (referencing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)); D.C.Code § 11–721(a)(3) ("The District of Columbia has jurisdiction of appeals from—orders or rulings of the Superior Court of the District of Columbia appealed by the United States or the District of Columbia pursuant to §§ 23–104 or 23–111(d)(2)."); D.C.Code § 23–104(c)

("The United States or the District of Columbia may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits."); D.C.Code § 23–111(d)(2) (*supra*, note 3). The District relies on *United States v. Shorter*, 343 A.2d 569, 571 (D.C.1975) (agreeing that the government "may appeal an order of the trial court which was entered without authority") (citing *District of Columbia v. Bosley*, 173 A.2d 218, 220 (D.C.1961)).

**4.** In *Hoelzel*, the court declared that "a writ may be appropriate [and it was] because the relief the state seeks is in the form of an order to compel the district court to perform a function the state claims is required. Moreover, the absence of the right of appeal may leave the state with no adequate remedy in the ordinary course of law." *Id.* at 609–10. Here, as we shall see, the court had no discretion with respect to the mandatory sentence. Furthermore, as we conclude, *infra*, D.C.Code § 23–111(d)(2) did not require the District to take an appeal prior to sentencing. *See infra* note 19.

writ of mandamus where trial court refused to impose mandatory consecutive sentences, as required by statute);[5] *People v. The District Court of the City and County of Denver*, 673 P.2d 991, 995 (Colo. 1983) ("The correction of an illegal sentence is an extraordinary cause for which mandamus is available"; "[a] court may not impose a sentence that is inconsistent with the terms specified by statutes.") (citations omitted); *see also United States v. Lane*, 284 F.2d 935, 938, 942 (9th Cir.1960) (approving writ of mandamus as "an available remedy in an appropriate case," where the trial court imposed probation even though the applicable statute prohibited probation) (citing *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)).

Despite these authorities, PDS and Mr. Fitzgerald contest the applicability here of the mandamus route used in *Stokes, supra*, primarily because they believe (a) mandamus would undermine important constitutional principles of separation of powers; (b) the government never filed a petition for writ of mandamus; and (c) the District cannot meet the stringent requirements for mandamus.[6] Treating the District's brief as a petition for a writ of mandamus would not undermine the constitutional doctrine of separation of powers. That doctrine "is concerned with the allocation of official power" among the three branches of government, and is designed to preclude "encroachment or aggrandizement of

one branch [of government] at the expense of the other."[7] Encroachment or aggrandizement can be seen "where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department," or where one branch of government "undermine[s] the authority and independence of one or another coordinate [b]ranch."[8] Rather than undermining legislative authority or aggrandizing the power of the judiciary, permitting mandamus in this case would result in the enforcement of the mandatory statutory penalty governing Mr. Fitzgerald's offense, and hence, it would be consistent with the legislature's goals regarding the safety of the streets and the penalties for those convicted of driving under the influence or drunk driving on more than one occasion. In short, we see no violation of the constitutional doctrine of separation of powers.

Nor do we agree that the District had to file a formal petition for writ of mandamus in this case. There was no reason to do so, since there was no hint in the trial court, or immediately after the District filed its appeal, that Mr. Fitzgerald would question the jurisdiction of this court to hear the District's appeal. Indeed, his strategy involved a request that this court affirm the trial court's decision to ignore his Virginia drunk driving offense and to sentence him in the District as a first offender. Moreover, even though Mr. Fitzgerald did not challenge this court's

5. "Mandamus is an extraordinary remedy used to enforce, as a matter of right, a public officer's performance of his or her public duties where no exercise of discretion on the officer's part is involved." *McKoski, supra*, 254 Ill.Dec. 729, 748 N.E.2d at 177–78 (citations omitted).

6. PDS also emphasizes double jeopardy considerations. We leave those considerations to the trial court, in the first instance, upon remand.

7. *Clinton v. Jones*, 520 U.S. 681, 699, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citation and internal quotation marks omitted).

8. *Mistretta v. United States*, 488 U.S. 361, 381, 382, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (emphasis in original) (citations and internal quotation marks omitted).

jurisdiction in his brief in the original proceeding, the District invoked *Stokes, supra,* and the mandamus doctrine, in its reply brief in the original proceeding.[9]

Furthermore, we do not agree that this is an inappropriate case for mandamus. "It is well established that the writ of mandamus is an extraordinary remedy, available only in those few cases where a trial court has refused to exercise or has exceeded its jurisdiction."[10] Thus, "[i]ts primary use is to confine [a] ... court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."[11] But, "the party seeking the writ must show that [its] right is clear and indisputable and that [it] has no other adequate means to obtain relief."[12] And, "[a] court should grant the writ only when there is a usurpation of judicial power or the clear abuse of discretion."[13] Here, mandamus was most appropriate because the trial court refused to follow the statutory mandate in sentencing Mr. Fitzgerald, and sought to exercise discretion where the statute permitted no discretion. The District has an indisputable right to seek to enforce the statutory scheme governing the penalizing of driving under the influence on its streets.

In sum, under the circumstances of this case, we see no impediment, constitutional or statutory, to treating the District's original brief as a petition for writ of mandamus. Consequently, "we proceed to the merits of this appeal by regarding the government's brief [in the original appellate proceeding] as a petition for a writ of mandamus, a recognized means of reviewing an allegedly unauthorized sentence." *Stokes, supra,* 365 A.2d at 617 (citations omitted).[14]

### *The Merits*

No other part of the **ANALYSIS** is amended.

It is FURTHER ORDERED that the petition for rehearing en banc is denied.

---

9. In focusing on Mr. Fitzgerald's waiver argument under D.C.Code § 23–111(d)(2), the District emphasized Super. Ct.Crim. R. 35(a) ("The Court may correct an illegal sentence at any time"), and referenced *Stokes, supra.* The District stated that in *Stokes* "this court treated the government's appeal as a *writ of mandamus,* which it stated is a recognized means of reviewing an allegedly unauthorized sentence."

10. *In re M.O.R.,* 851 A.2d 503, 509 (D.C.2004) (citations and internal quotation marks omitted).

11. *Id.* (citations and internal quotation marks omitted).

12. *Id.* (citations and internal quotation marks omitted).

13. *Banov v. Kennedy,* 694 A.2d 850, 858 (D.C. 1997) (citation and internal quotation marks omitted).

14. On July 7, 2008, this court received a letter, filed pursuant to D.C.App. R. 28(k), from *amicus,* PDS, calling our attention to the Supreme Court's recent ruling in *Greenlaw v. United States,* No. 07–330, —— U.S. ——, 128 S.Ct. 2559, 171 L.Ed.2d 399, 2008 U.S. Lexis 5259 (2008). The appeal there, unlike the one before us, was filed by the defendant, not the government, and that case is not controlling. The precise issue presented on appeal in *Greenlaw* was whether "a United States Court of Appeals, acting on its own initiative, [may] order an increase in a defendant's sentence[.]" —— U.S. at ——, 128 S.Ct. at 2562, 171 L.Ed.2d 399, 2008 U.S. Lexis 5259, at *7. Unlike the Eighth Circuit, this court responded to an appeal filed by the District, and did not, *sua sponte,* increase Mr. Fitzgerald's sentence. Moreover, Mr. Fitzgerald's case does not involve the "cross-appeal rule," and its time limits, as did *Greenlaw.* The District filed a timely notice of appeal, thus putting Mr. Fitzgerald on immediate notice that the District would seek to enforce the mandatory statutory penalty applicable to his conviction. Furthermore, we see nothing in *Greenlaw* which calls into question the practice of treat-

REID, Associate Judge:

(Amended July 17, 2008)[1]

Appellant, the District of Columbia, appeals the trial court's judgment in which it declined to enhance appellee Mark L. Fitzgerald's penalty for driving under the influence in the District of Columbia, in violation of D.C.Code § 50–2201.05(b)(1)(A) (2001). Mr. Fitzgerald previously was convicted of operating a motor vehicle after illegally consuming alcohol, in violation of Va.Code Ann. § 18.2–266.1 (2004). D.C.Code § 50–2201.05(b)(4) requires a conviction under "substantially similar laws of any other state" to be "considered a conviction" for purposes of the penalty enhancement provision. We hold that D.C.Code § 50–2201.05(b)(1) (2001) and Va.Code Ann. § 18.2–266.1 (2004) are substantially similar, and thus, the trial court was required to enhance Mr. Fitzgerald's penalty under D.C.Code § 50–2201.05(b)(1)(B). Accordingly, we vacate Mr. Fitzgerald's sentence and remand this case to the trial court for resentencing.

## FACTUAL SUMMARY

The record reveals that on June 11, 2003, Mr. Fitzgerald was convicted in the General District Court of Fairfax County, Virginia for the criminal offense of driving after illegally consuming alcohol, in violation of Va.Code Ann. § 18.2–266.1(A) (2004). The offense occurred on April 25, 2003. At the time of the offense, Mr. Fitzgerald was twenty-years-old. Following his conviction, his license was suspended for six months.

On August 4, 2005, Mr. Fitzgerald, then twenty-two years of age, waived his right to a jury trial and agreed to enter a guilty plea to the charge of driving under the influence per se in the District of Columbia, in violation of D.C.Code § 50–2201.05(b)(1)(A) (2001). The government's proffer of proof revealed that on February 15, 2005, at approximately 11:50 p.m. in the 2400 block of K Street, Northwest, Officers Proctor and Fair of the Metropolitan Police Department were conducting speeding enforcement when they heard a vehicle engine racing on Washington Circle Bridge. The vehicle was stopped at a red light and when it turned green, the officers "observed a red Ford Mustang speeding toward them at a high rate of speed." The car "came to a hard stop behind the [police] cruiser." Officer Fair approached the driver's side of the car where Mr. Fitzgerald was seated, and detected a strong odor of alcohol. He asked Mr. Fitzgerald "when was the last time he consumed alcohol." Mr. Fitzgerald responded, "45 minutes to an hour ago." Officer Proctor asked Mr. Fitzgerald to step out of the vehicle and conducted three field sobriety tests. Mr. Fitzgerald showed signs of alcohol impairment, and "subsequently stated that he had consumed four beers." Mr. Fitzgerald also consented to the performance of a chemical test, the results of which revealed a blood/alcohol level of .10.

The District noted that Mr. Fitzgerald had a prior conviction in the state of Virginia for driving after illegally consuming alcohol, and that the government had reserved the right to use previously filed enhancement papers.[2] The trial court

---

ing the government's brief as a request for a writ of mandamus in appropriate cases.

1. This opinion was issued originally on December 20, 2007. *See District of Columbia v. Mark L. Fitzgerald*, 939 A.2d 65 (D.C.2007). Upon consideration of Mr. Fitzgerald's post-decision petition for rehearing, and the supplemental briefs relating to that petition, this opinion is being reissued in amended form. The amended opinion addresses an issue which was not raised during the original appellate proceeding, the jurisdiction of this court to hear this matter.

2. The trial court accepted the enhancement papers for the purpose of converting the offense into a jury demandable charge.

agreed that the enhancement papers were properly filed, but took the position that the Virginia offense was a juvenile matter, that the filing of enhancement papers did not "mean [that the court] ha[d] to enhance [Mr. Fitzgerald's] punishment."[3] In light of Mr. Fitzgerald's Virginia conviction, the District recommended that the trial court impose a sentence of "364 days, ESS, all but 5 days with one year of supervised probation," as well as a $1,000.00 fine, a payment of $100.00 to the crime victims compensation fund, conditions relating to the traffic alcohol program, and alcohol treatment. However, the trial judge imposed a sentence of ninety days with execution suspended, six months supervised probation, a $300 fine, a $100 contribution to the Victims of Crime Fund, and completion of the TAP program.

**3.** D.C.Code § 23–111 (2001) concerns an enhancement penalty and provides, in pertinent part:

(a) (1) No person who stands convicted of an offense under the laws of the District of Columbia shall be sentenced to increased punishment by reason of one or more previous convictions, unless prior to trial or before entry of a plea of guilty, the United States attorney or the Corporation Counsel, as the case may be, files an information with the clerk of the court, and serves a copy of such information on the person or counsel for the person, stating in writing the previous convictions to be relied upon....

(b) If the prosecutor files an information under this section, the court shall, after conviction but before pronouncement of sentence, inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence....

(c) (1) If the person denies any allegation of the information of previous conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the Government to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1). The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the prosecuting authority shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law. (2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge to a previous conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

(d) (1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of previous convictions, the court shall proceed to impose sentence upon him as provided by law. (2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the prosecutor, postpone sentence to allow an appeal from that determination. If no such request is made, the court shall impose sentence as provided by law. The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

## ANALYSIS

### *Petition for Rehearing*

Following the issuance of the original decision in this case, Mr. Fitzgerald filed petitions for rehearing and rehearing *en banc*, which the District opposed. The Public Defender Service for the District of Columbia ("PDS") requested leave to enter as *amicus curiae* and to file a brief, in support of Mr. Fitzgerald's petitions. Subsequently, on April 9, 2008, we granted the request of PDS. PDS raised an issue which was not raised during Mr. Fitzgerald's original appellate proceeding, "whether this court lacks jurisdiction to adjudicate this case."[4] In our April 9, 2008, order, we permitted the parties, and *amicus* to submit supplemental briefs on the following questions: "(1) Whether this court had jurisdiction over the District government's appeal, and if not, (2) Whether this court may regard the District's brief as a petition for writ of mandamus to review [Mr. Fitzgerald's] unauthorized sentence." On May 22 and 23, the parties and *amicus* lodged briefs in response to the order.

In its supplemental brief, the District argues that "this [c]ourt has jurisdiction over a government appeal of an unauthorized sentence order," and if it does not, this court may "treat the District of Co-lumbia's brief as a Petition for Writ of Mandamus" to "review the [trial court's] unauthorized order refusing to apply the mandatory minimum sentence" in this case. Mr. Fitzgerald argues, in essence, that the District waived its statutory authority to appeal the trial court's decision not to take into consideration his Virginia conviction in sentencing him, and therefore, this court lacks jurisdiction over the District's appeal. He further claims that mandamus is inappropriate in this case. *Amicus* contends that not only does this court lack jurisdiction over the District's appeal, but also that "this [c]ourt may not use the extraordinary writ of mandamus under the circumstances presented here...."[5]

In their analysis of the questions presented for consideration by this court's April 9, 2008, order, Mr. Fitzgerald and PDS insist that there is no statutory basis for a government appeal of appellee's sentence in this case, and hence, this court lacks jurisdiction to hear the District's appeal. They contend that this court's jurisdiction under D.C.Code § 11–721 is limited to orders issued under D.C.Code §§ 23–104 (which is not applicable here), or 23–111(d)(2); and that the District failed to meet the express terms of § 23–111(d)(2) with respect to its appeal.[6]

---

4. In his original brief, responding to the District's brief on appeal, Mr. Fitzgerald did not question this court's jurisdiction to entertain the District's appeal. Rather, he asserted, in part, that the District waived its statutory right to appeal prior to sentencing. He also maintained that this court should affirm the trial court's decision to sentence him as a first time offender.

5. Mr. Fitzgerald acknowledges that his argument in his petition for rehearing differs from that presented in his original appellate brief:

> Although similar arguments [to those made in this supplemental brief] have been previously presented by the appellee as a waiver

argument, with the help of PDS, the appellee's ship which was off course has been steered in the proper direction.

However, we disagree with his statement that his contention in the original appellate proceeding "was ... a jurisdictional argument."

6. Authority cited by PDS and Mr. Fitzgerald includes: *District of Columbia v. Whitley*, 640 A.2d 710, 712 (D.C.1994) ("[T]he government has no right of appeal in a criminal case unless there is express legislative authorization") (referencing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)); D.C.Code § 11–721(a)(3) ("The District of Columbia has jurisdiction of appeals from-orders or rulings

We are doubtful that this court's jurisdiction is as limited as Mr. Fitzgerald and PDS contend, as D.C.Code § 11–721(a)(1) gives this court "jurisdiction of appeals from [ ] all final orders and judgments of the Superior Court of the District of Columbia." However, we need not delve into PDS' and Mr. Fitzgerald's statutory arguments, pertaining to the alleged lack of authority for the District's appeal of Mr. Fitzgerald's sentence and this court's jurisdiction, because our case law permits us to consider the government's appellate brief as a petition for writ of mandamus. As we said in *United States v. Stokes,* 365 A.2d 615 (D.C.1976), "we proceed to the merits of this appeal by regarding the government's brief as a petition for a writ of mandamus, a recognized means of reviewing an allegedly unauthorized sentence." *Id.* at 617 (citations omitted). This practice is consistent with that followed in other jurisdictions. *See Minnesota v. Hoelzel,* 639 N.W.2d 605, 610 (Minn.2002) (construing state's appeal as a petition for writ of mandamus where trial judge found defendant guilty of first-degree burglary but refused to enter judgment on that finding);[7] *People ex rel. Waller v. McKoski,* 195 Ill.2d 393, 254 Ill.Dec. 729, 748 N.E.2d 175, 179–80 (2001) (issuing writ of mandamus where trial court refused to impose mandatory consecutive sentences, as required by statute);[8] *People v. The District Court of the City and County of Denver,* 673 P.2d 991, 995 (Colo. 1983) ("The correction of an illegal sentence is an extraordinary cause for which mandamus is available"; "[a] court may not impose a sentence that is inconsistent with the terms specified by statutes.") (citations omitted); *see also United States v. Lane,* 284 F.2d 935, 938, 942 (9th Cir.1960) (approving writ of mandamus as "an available remedy in an appropriate case," where the trial court imposed probation even though the applicable statute prohibited probation) (citing *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)).

Despite these authorities, PDS and Mr. Fitzgerald contest the applicability here of the mandamus route used in *Stokes, supra,* primarily because they believe (a) mandamus would undermine important constitutional principles of separation of powers; (b) the government never filed a petition for writ of mandamus; and (c) the District cannot meet the stringent requirements

of the Superior Court of the District of Columbia appealed by the United States or the District of Columbia pursuant to §§ 23–104 or 23–111(d)(2)."); D.C.Code § 23–104(c) ("The United States or the District of Columbia may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits."); D.C.Code § 23–111(d)(2) (*supra* note 3). The District relies on *United States v. Shorter,* 343 A.2d 569, 571 (D.C.1975) (agreeing that the government "may appeal an order of the trial court which was entered without authority") (citing *District of Columbia v. Bosley,* 173 A.2d 218, 220 (D.C.1961)).

7. In *Hoelzel,* the court declared that "a writ may be appropriate [and it was] because the relief the state seeks is in the form of an order to compel the district court to perform a function the state claims is required. Moreover, the absence of the right of appeal may leave the state with no adequate remedy in the ordinary course of law." *Id.* at 609–10. Here, as we shall see, the court had no discretion with respect to the mandatory sentence. Furthermore, as we conclude, *infra,* D.C.Code § 23–111(d)(2) did not require the District to take an appeal prior to sentencing. *See infra* note 19.

8. "Mandamus is an extraordinary remedy used to enforce, as a matter of right, a public officer's performance of his or her public duties where no exercise of discretion on the officer's part is involved." *McKoski, supra,* 254 Ill.Dec. 729, 748 N.E.2d at 177–78 (citations omitted).

for mandamus.[9] Treating the District's brief as a petition for a writ of mandamus would not undermine the constitutional doctrine of separation of powers. That doctrine "is concerned with the allocation of official power" among the three branches of government, and is designed to preclude "encroachment or aggrandizement of one branch [of government] at the expense of the other."[10] Encroachment or aggrandizement can be seen "where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department," or where one branch of government "undermine[s] the authority and independence of one or another coordinate [b]ranch."[11] Rather than undermining legislative authority or aggrandizing the power of the judiciary, permitting mandamus in this case would result in the enforcement of the mandatory statutory penalty governing Mr. Fitzgerald's offense, and hence, it would be consistent with the legislature's goals regarding the safety of the streets and the penalties for those convicted of driving under the influence or drunk driving on more than one occasion. In short, we see no violation of the constitutional doctrine of separation of powers.

Nor do we agree that the District had to file a formal petition for writ of mandamus

in this case. There was no reason to do so, since there was no hint in the trial court, or immediately after the District filed its appeal, that Mr. Fitzgerald would question the jurisdiction of this court to hear the District's appeal. Indeed, his strategy involved a request that this court affirm the trial court's decision to ignore his Virginia drunk driving offense and to sentence him in the District as a first offender. Moreover, even though Mr. Fitzgerald did not challenge this court's jurisdiction in his brief in the original proceeding, the District invoked *Stokes, supra,* and the mandamus doctrine, in its reply brief in the original proceeding.[12]

 Furthermore, we do not agree that this is an inappropriate case for mandamus. "It is well established that the writ of mandamus is an extraordinary remedy, available only in those few cases where a trial court has refused to exercise or has exceeded its jurisdiction."[13] Thus, "[i]ts primary use is to confine [a] ... court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."[14] But, "the party seeking the writ must show that [its] right is clear and indisputable and that [it] has no other adequate means to obtain relief."[15] And, "[a] court

9. PDS also emphasizes double jeopardy considerations. We leave those considerations to the trial court, in the first instance, upon remand.

10. *Clinton v. Jones,* 520 U.S. 681, 699, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citation and internal quotation marks omitted).

11. *Mistretta v. United States,* 488 U.S. 361, 381, 382, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (emphasis in original) (citations and internal quotation marks omitted).

12. In focusing on Mr. Fitzgerald's waiver argument under D.C.Code § 23–111(d)(2), the District emphasized Super. Ct.Crim. R. 35(a)

("The Court may correct an illegal sentence at any time"), and referenced *Stokes, supra.* The District stated that in *Stokes* "this court treated the government's appeal as a *writ of mandamus,* which it stated is a recognized means of reviewing an allegedly unauthorized sentence."

13. *In re M.O.R.,* 851 A.2d 503, 509 (D.C.2004) (citations and internal quotation marks omitted).

14. *Id.* (citations and internal quotation marks omitted).

15. *Id.* (citations and internal quotation marks omitted).

should grant the writ only when there is a usurpation of judicial power or the clear abuse of discretion."[16] Here, mandamus was most appropriate because the trial court refused to follow the statutory mandate in sentencing Mr. Fitzgerald, and sought to exercise discretion where the statute permitted no discretion. The District has an indisputable right to seek to enforce the statutory scheme governing the penalizing of driving under the influence on its streets.

In sum, under the circumstances of this case, we see no impediment, constitutional or statutory, to treating the District's original brief as a petition for writ of mandamus. Consequently, "we proceed to the merits of this appeal by regarding the government's brief [in the original appellate proceeding] as a petition for a writ of mandamus, a recognized means of reviewing an allegedly unauthorized sentence." *Stokes, supra,* 365 A.2d at 617 (citations omitted).[17]

### The Merits

The District of Columbia argues that D.C.Code § 50–2201.05(b)(1)(B) (2001) required the trial court to impose an enhanced sentence on Mr. Fitzgerald since he was convicted of a second offense of driving under the influence within a fifteen-year period. Thus, the District con-

tends, the trial court erred by not considering Mr. Fitzgerald's prior Virginia conviction when it sentenced him. The District asserts that D.C.Code § 50–2201.05(b)(1) and Va.Code Ann. § 18.2–266.1 are substantially similar, and hence, the trial judge had no discretion regarding imposition of the enhanced penalty. Mr. Fitzgerald primarily claims that the Virginia and District statutes are not substantially similar, and further argues that the District waived its right to appeal on the ground of the enhancement penalty because it did not follow the dictates of D.C.Code § 23–111(d)(2) by appealing, prior to sentencing, the trial court's decision not to enhance his penalty.

■■■■ Our review of this matter is *de novo* because it involves a question of statutory construction. *District of Columbia v. Morrissey,* 668 A.2d 792, 796 (D.C.1995). "We look to the plain meaning of the statute first, construing words according to their ordinary meaning." *Boyle v. Giral,* 820 A.2d 561, 568 (D.C.2003) (citing *J. Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989)). "The literal words of [a] statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a

---

16. *Banov v. Kennedy,* 694 A.2d 850, 858 (D.C. 1997) (citation and internal quotation marks omitted).

17. On July 7, 2008, this court received a letter, filed pursuant to D.C.App. R. 28(k), from *amicus,* PDS, calling our attention to the Supreme Court's recent ruling in *Greenlaw v. United States,* No. 07–330, —— U.S. ——, 128 S.Ct. 2559, 171 L.Ed.2d 399, 2008 U.S. Lexis 5259 (2008). The appeal there, unlike the one before us, was filed by the defendant, not the government, and that case is not controlling. The precise issue presented on appeal in *Greenlaw* was whether "a United States Court of Appeals, acting on its own initiative, [may] order an increase in a defendant's sen-

tence[.]" 128 S.Ct. at 2562, 2008 U.S. Lexis 5259, at *7. Unlike the Eighth Circuit, this court responded to an appeal filed by the District, and did not, *sua sponte,* increase Mr. Fitzgerald's sentence. Moreover, Mr. Fitzgerald's case does not involve the "cross-appeal rule," and its time limits, as did *Greenlaw.* The District filed a timely notice of appeal, thus putting Mr. Fitzgerald on immediate notice that the District would seek to enforce the mandatory statutory penalty applicable to his conviction. Furthermore, we see nothing in *Greenlaw* which calls into question the practice of treating the government's brief as a request for a writ of mandamus in appropriate cases.

sensible construction and one that would not work an obvious injustice." *Id.* (citing *District of Columbia v. Gallagher,* 734 A.2d 1087, 1091 (D.C.1999)) (other citation and internal quotation marks omitted); *see also Cass v. District of Columbia,* 829 A.2d 480, 482 (D.C.2003). "We must also be mindful that our interpretation [of a statute] is not at variance with the policy of the legislation as a whole, requiring that we remain more faithful to the purpose than the word." *Jeffrey v. United States,* 892 A.2d 1122, 1128 (D.C.2006) (citation and internal quotation marks omitted). We may also look to the legislative history of a statute. *Id.*

The statute under which Mr. Fitzgerald was convicted in the District is D.C.Code § 50–2201.05(b)(1) (2001). At the time of his conviction, the relevant portion of the statute, § 50–2201.05(b)(1)(A) (Supp.2006), specified:

> No individual shall, when the individual's blood contains .08% or more, by weight, of alcohol (or when .38 micrograms or more of alcohol are contained in 1 milliliter of his breath, consisting of substantially alveolar air), or the individual's urine contains .10% or more, by weight, of alcohol, or under the influence of intoxicating liquor or any drug or any combination thereof, operate or be in physical control of any vehicle in the District. *No individual under 21 years of age shall, when the individual's blood, breath, or urine contains any measurable amount of alcohol, operate or be in physical control of any vehicle in the District.* Any individual violating any provision of this paragraph, upon conviction for the first offense, unless the individual has previously been convicted for a violation of paragraph (2) of this subsection, shall be fined $300 and may be imprisoned for not more than 90 days. In addition, if the individual's blood contains at least .20%, but not more than

.25%, by weight, of alcohol, the individual shall be imprisoned for an additional mandatory minimum period of 5 days, or if the level is more than .25%, by weight, of alcohol, for an additional mandatory minimum period of 10 days. The additional mandatory minimum period shall not be suspended by the court. (Emphasis added).

The enhanced penalty provision of the statute is § 50–2201.05(b)(1)(B) which states:

> Upon conviction for the second offense, or for the first offense following a previous conviction for a violation of paragraph (2) of this subsection, within a 15–year period, an individual shall be fined an amount not less $1,000 and not more than $5,000 and sentenced for a period of imprisonment of not less than 5 days, which must be imposed and not suspended, and not more than one year, or required to perform at least 30 days of community service in accordance with D.C.Code § 16–712 . . . .

In partial response to the District's argument, we must determine whether Mr. Fitzgerald's Virginia conviction is a "conviction" within the meaning of D.C.Code § 50–2201.05(b)(1)(B), thus requiring the imposition of an enhanced sentence. D.C.Code § 50–2201.05(b)(4) (2001) specifies, in pertinent part:

> A conviction of any individual or a finding of guilty in the case of a juvenile under the provisions of *substantially similar laws* of any other state or of the United States, shall be considered a conviction.

Mr. Fitzgerald was convicted on June 11, 2003, in Virginia on a charge of driving after illegally consuming alcohol, in violation of Va.Code Ann. § 18.2–266.1, which provided:

A. It shall be unlawful for any person under the age of 21 to operate any motor vehicle after illegally consuming alcohol. Any such person with a blood alcohol concentration of 0.02 percent or more by weight by volume or 0.02 grams or more per 210 liters of breath but less than 0.08 by weight by volume or less than 0.08 grams per 210 liters of breath as indicated by a chemical test administered as provided in this article shall be in violation of this section.

B. A violation of this section shall be punishable by forfeiture of such person's license to operate a motor vehicle for a period of six months from the date of conviction and by a fine of not more than $500. This suspension period shall be in addition to the suspension period provided under § 46.2–391.2. The penalties and license forfeiture provisions set forth in §§ 16.1–278.9, 18.2–270 and 18.2–271 shall not apply to a violation of this section. Any person convicted of a violation of this section shall be eligible to attend an Alcohol Safety Action Program under the provisions of § 18.2–271.1 and may, in the discretion of the court, be issued a restricted license during the term of license suspension.

C. Notwithstanding §§ 16.1–278.8 and 16.1–278.9, upon adjudicating a juvenile delinquent based upon a violation of this section, the juvenile and domestic relations district court shall order disposition as provided in subsection B.

We now analyze whether the Virginia and District statutory provisions relating to drunk driving by a person under twenty-one years of age are substantially similar, thus requiring the imposition of an enhanced sentence under D.C.Code § 50–2201.05(b)(1)(B). Under the District's law, a person operating a vehicle under the age of twenty-one, who has *any measurable amount of alcohol* in his/her system, is in violation of D.C.Code § 50–2201.05(b)(1). (Emphasis added). And Virginia law, Va. Code Ann. § 18.2–266.1, makes it unlawful "for any person under the age of 21 to operate any motor vehicle after illegally consuming alcohol." Va.Code Ann. § 18.2–266.1 goes on to say that "[a]ny such person with a blood alcohol concentration of 0.02 percent or more by weight by volume or 0.02 grams or more per 210 liters of breath but less than 0.08 by weight by volume or less than 0.08 grams per 210 liters of breath as indicated by a chemical test administered as provided in this article shall be in violation of this section."

Our case law is not extensive on the question of how one determines whether statutes are "substantially similar," and we apparently never have decided this issue in the context of drunk driving statutes. Other jurisdictions have applied an elements test to determine whether statutes are substantially similar. *See State v. Akins,* 824 N.E.2d 676, 678–79 (Ind.2005) (involving Michigan and Indiana statutes pertaining to operating a vehicle under the influence of intoxicating liquor and operating a vehicle while intoxicated; elements of the Michigan statute ("impaired control and mental clarity or driving ability that is substantially and materially affected") are substantially similar to the Indiana statute ("impaired condition of thought and action and the loss of normal control")); *Derendal v. Griffith,* 209 Ariz. 416, 104 P.3d 147, 156 (2005) ("The test for determining whether a modern offense is of the same character as a common law offense is whether the modern offense shares substantially similar elements with the common law offense."); *State v. Ducheneaux,* 738 N.W.2d 54, 56 (S.D.2007) (elements of South Dakota driving under the influence and Colorado driving while ability impaired statutes are substantially similar). In *Commonwealth v. Ayers,* 17 Va.App.

401, 437 S.E.2d 580, 581 (1993), the Court of Appeals of Virginia applied an elements test in ascertaining whether a North Carolina statute prohibiting impaired driving after consuming sufficient alcohol to have "at any relevant time after the driving, an alcohol concentration of 0.10 or more," substantially conformed to Va.Code § 18.2–266(i) making it "unlawful for any person to drive or operate any motor vehicle while having a blood alcohol concentration of 0.10 percent or more."[18] *See also* *Shinault v. Commonwealth*, 228 Va. 269, 321 S.E.2d 652, 654 (1984).[19]

Still other approaches are reflected in Virginia state and federal cases, and a California state case. In *Commonwealth v. Lowe*, 31 Va.App. 806, 525 S.E.2d 636 (2000), the Virginia Court of Appeals considered whether a person with a prior conviction under prior Maryland law for driving while intoxicated could be considered an habitual offender under Virginia law. To resolve the issue, the court invoked language from the Driver License Compact. *Id.* at 640. The Driver License Compact, which Congress encouraged by consenting to its formation, "is an interstate agreement among the party states to share traffic safety information and to ensure that drivers who commit traffic and vehicle code violations in party states are sanctioned in the driver's home or licensing state." Timothy P. Wile, "A Practitioner's Guide to the Driver License Compact of 1961," 72 PA Bar Assn. Quarterly 166 (October 2001). Virginia and Maryland (as well as the District of Columbia and approximately 30 other states, *see* D.C.Code § 50–1001 (2001 & 2007 Supp.)) have joined the Compact.

By referencing the Compact to achieve its purposes, the *Lowe* court determined that despite the use of the broader word

---

**18.** The court concluded that the North Carolina statute did not substantially conform to the Virginia statute because the North Carolina statute "contain[ed] a conclusive presumption that does not require that the accused have any particular blood alcohol concentration [] *at the time of driving*, so long as he consumed no additional alcohol between the time of the stop and the time of the test"; whereas in Virginia, "[t]he result of the subsequently administered chemical test is merely an evidentiary fact which creates a *rebuttable presumption* that the measurement accurately reflects the blood alcohol concentration at the time of driving." *Ayers, supra*, 437 S.E.2d at 581–82 (citations and internal quotation marks omitted) (emphasis in original).

**19.** The above referenced Virginia cases concern Va.Code § 18.2–266 rather than 18.2–266.1. Section 18.2–266 provides:

It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (v) while such person has a blood concentration of any of the following substances at a level that is equal to or greater than: (a) 0.02 milligrams of cocaine per liter of blood, (b) 0.1 milligrams of methamphetamine per liter of blood, (c) 0.01 milligrams of phencyclidine per liter of blood, or (d) 0.1 milligrams of 3, 4–methylenedioxymethamphetamine per liter of blood. A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii), (iv), or (v).

For the purposes of this article, the term "motor vehicle" includes mopeds, while operated on the public highways of this Commonwealth.

"vehicle" in the Maryland driving under the influence statute and the use of the more specific words "motor vehicle" in the Virginia driving under the influence statute, the Maryland statute substantially conformed to the Virginia Code provision because both jurisdictions had joined the Compact and had incorporated the terms of the Compact into their respective statutes. Thus, even though the Maryland statute used the word "vehicle," which included more than a motor vehicle, the difference was insignificant because in the context of the *Lowe* case "vehicle" meant "motor vehicle." *Id.* at 638, 640. A similar conclusion was reached by a California court, which declared that the differences between the California and Virginia DUI states were "irrelevant when viewed through the prism of the Driver License Compact." And, the court decided that "the Virginia and California DUI laws are substantially the same with respect to the behavior that counts under the Driver License Compact—driving while under the influence." *Moles v. Gourley*, No. HO22750 (2003), 112 Cal.App.4th 1049, 5 Cal.Rptr.3d 555, 2003 WL 22411552 at *9, 2003 Cal.App. Lexis 1587 at **14, 15.

A different, fairly simple approach to the question of substantial similarity is reflected in a Fourth Circuit federal case, *United States v. Thomas*, 367 F.3d 194 (4th Cir.2004), a case pertaining to Maryland and Virginia driving while intoxicated laws. After reiterating a principle articulated in Virginia state cases—"substantially similar" "does not mean that the other state's law must substantially conform in every respect to [Virginia's statute]"—the court declared that: "A statute is substantially similar if any actions violating the statute necessarily would violate the Virginia statute as well." *Id.* at 198 (citing *Turner v. Commonwealth*, 38 Va.App. 851, 568 S.E.2d 468, 472 (2002)).

A case in which we addressed the issue of substantial similarity of statutes in another context suggests that we have not favored the elements test in determining "substantial similarity," but have examined the conduct which the law impacts, and we have looked to the legislative purpose. In *In re Doe*, 855 A.2d 1100 (D.C.2004), a case involving sex offender registration due to a violation of District law and federal law, we were aided by the legislative history of the District's statute in determining whether the District and federal offenses were "substantially similar." We declared that the District's legislature, the Council of the District of Columbia, had "eschew[ed] 'element-by-element comparisons' between offenses in [the District] and similar offenses elsewhere," and that the Council "did not intend the term 'substantially similar' to be construed narrowly or restrictively." *Id.* at 1104–05. "Rather, the Council contemplated that the term would be given a broad construction to effectuate the goals of the legislation." *Id.* at 1105.

 Based upon our review of differing approaches to the question of substantial similarity of drunk driving statutes, and partly upon our *Doe* opinion, we believe the most appropriate test of substantial similarity of statutes in the case before us is one which focuses on the prohibited statutory conduct or action reflected in each state's applicable law(s) (here Virginia and the District), and the legislature's purpose or intent in enacting the statutory scheme.

### The Prohibited Statutory Conduct or Action

 At issue here are the Virginia and District laws governing a minor's operation of a vehicle or motor vehicle after the consumption of alcohol. In interpreting these statutes, we look first to their plain

meaning, *see Boyle, supra,* 820 A.2d at 568. Both D.C.Code § 50–2201(b)(1)(A) and Va.Code Ann. § 18.2–266.1(A) cover individuals or persons under age 21. In the District, any individual under twenty-one years of age is prohibited from "operat[ing] or be[ing] in physical control" of a "vehicle" when his or her blood contains "any measurable amount of alcohol." In Virginia, any person under age twenty-one is prohibited from "operat[ing] any motor vehicle after illegally consuming alcohol." Virginia's statute also specifies that a person under age twenty-one is in violation of the statute if he or she has "a blood alcohol concentration of 0.02 percent or more by weight by volume ... but less than 0.08 by weight by volume ... as indicated by a chemical test...." We do not discern any substantial difference in the conduct prohibited by the applicable District and Virginia statutes. If someone under age twenty-one has consumed alcohol illegally in Virginia and has a blood alcohol concentration of between 0.02 percent and 0.08 by weight by volume, then that person would have ingested a "measurable amount" of alcohol under the District's law, and hence, that person would be prohibited from operating a motor vehicle in the District.

Our conclusion that there is no substantial difference in the conduct prohibited by the District and Virginia statutes with respect to persons under age twenty-one appears to be consistent with another case decided by the Court of Appeals of Virginia, *Mejia v. Commonwealth of Virginia,* 23 Va.App. 173, 474 S.E.2d 866 (1996). There, the court concluded: "[T]he offense defined by the first sentence of Code § 18.2–266.1(A) is proved if the Commonwealth proves that a person under the age of twenty-one years operates a motor vehicle after consuming alcohol, in any amount, and that the consumption was illegal." *Id.* at 868. In our view, the phrases "in any amount," and "illegally consuming," as used in *Mejia,* do not alter our conclusion, nor does the determination that Va.Code §§ 18.2–266 and 18.2–266.1 "create[ ] a rebuttable presumption that a defendant's blood alcohol content while driving was the same as indicated by the results of a subsequently administered test," *Charles v. Commonwealth,* 23 Va.App. 161, 474 S.E.2d 860, 861 (1996). Practically speaking, the words "in any amount" are tantamount to at least a blood concentration of 0.02 grams.

Moreover, as the *Mejia* court continued: "We construe the second sentence [referencing a blood concentration of 0.02 to 0.08 grams] to provide the establishment of a *prima facie* case upon proof that a person under twenty-one years of age operates a motor vehicle while having the prescribed level of blood alcohol concentration, casting upon the accused against whom such a *prima facie* case is established the burden of going forward with evidence raising a reasonable doubt as to the illegality of his alcohol consumption." *Mejia, supra,* 474 S.E.2d at 868. *See also Yap v. Commonwealth,* 49 Va.App. 622, 643 S.E.2d 523, 527, 528 (2007) ("[T]he ultimate fact that the Commonwealth must prove is the alcohol content at the time of driving. [T]he statutory language of Code § 18.2–266(i) provides the basis for a presumption that the blood alcohol concentration while driving was the same as indicated by the results of the subsequent test." "Code § 18.2–266 does not establish a mandatory presumption but allows only a permissive inference that the fact finder is free to reject.") (citations and internal quotation marks omitted). The District's "per se" statute may be described as embodying a *prima facie* case of a violation, but nevertheless, one which can be rebutted by other evidence, such as that challenging test procedures and results. In that regard, both the Virginia and the District statutes

permit a defendant to raise defenses which cast doubt on the government's case, and both place the ultimate burden of proof on the prosecution. Thus, the conduct or action prohibited by the Virginia statute is substantially similar to that proscribed in the District. *See Thomas, supra,* 367 F.3d at 198 ("A statute is substantially similar if any actions violating the statute necessarily would violate the [District's] statute as well.") (citation omitted).

### Legislature's Purpose or Intent

We turn now to the second factor governing our review of the substantial similarity issue—the legislature's purpose or intent. As we have said previously, "[t]he literal words of [a] statute ... are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Boyle, supra,* 820 A.2d at 568 (citing *Gallagher,* 734 A.2d at 1091) (other citation and internal quotation marks omitted). Moreover, consulting legislative history may be important because "[w]e must [ ] be mindful that our interpretation [of a statute] is not at variance with the policy of the legislation as a whole, requiring that we remain more faithful to the purpose than the word." *Jeffrey, supra,* 892 A.2d at 1128.

Here, both the District and Virginia statutes reflect a legislative purpose to make streets and public highways safer by curbing drunk driving. In introducing the bill which resulted in the provisions under which Mr. Fitzgerald was convicted and sentenced, the Chairperson of the Committee on Public Works and the Environment stated: "[T]he purpose of this legislation is to curtail alcohol-related traffic injuries and fatalities by repeat offenders by providing enhanced penalties and mandatory prison terms for repeat offenders (second and subsequent convictions)." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC WORKS AND THE ENVIRONMENT, "Report on Bill 13–715, 'the Drunk Driving Repeat Offenders Amendment Act of 2000,'" at 2. Mutual Virginia and District legislative purposes to address driving which makes streets and highways unsafe are evident in the Driver License Compact to which both jurisdictions consented. The language of the Compact is identical for both jurisdictions. Article I(a), which contains "Findings and Declaration of Policy," specifies, in part:

(a) The party states find that:

(1) The safety of their streets and highways is materially affected by the degree of compliance with state laws and local ordinances relating to the operation of motor vehicles.

(2) Violation of such law or ordinance is evidence that the violator engages in conduct which is likely to endanger the safety of persons and property....

D.C.Code § 50–1001; Va.Code. Ann. 46.2–483. Each party state is required to report a conviction of a person from another party state to that state pursuant to Article III of the Compact; and under Article IV foreign state convictions, including those for driving under the influence of intoxicating liquor must be given the same effect "as it would if such offense had occurred in the home state...."

In summary, based upon our analysis of the prohibited statutory conduct or action evident in the District and Virginia statutes under which Mr. White was convicted, as well as the legislative purpose and intent behind the applicable statutes, we hold that the Va.Code Ann. § 18.2–266.1(A) is substantially similar to D.C.Code § 50–2201.05(b)(1)(A). Consequently, the trial court was required to consider Mr. Fitzgerald's Virginia conviction as a "conviction," *see* D.C.Code § 50–2201.05(b)(4), and to impose a sentence

consistent with D.C.Code § 50–2201.05(b)(1)(B), that is, a fine in "an amount not less than $1,000 and not more than $5,000" and "a period of imprisonment of not less than 5 days, ... and not more than one year," or the performance of "at least 30 days of community service in accordance with D.C.Code § 16–712. ... ." Since the trial court did not follow the legislative mandate, we are constrained to vacate Mr. Fitzgerald's sentence and to remand this case to the trial court for resentencing.[20]

For the foregoing reasons, we vacate Mr. Fitzgerald's sentence and remand this matter to the trial court.

*So ordered.*

---

20. Mr. Fitzgerald argues that "[b]oth [D.C.Code §§ ] 50–2201.05 and 23–111 must be read together to give the trial court the legal authority to apply enhanced penalties"; and that "[o]nce the trial court has ruled, as a matter of law, that a defendant is not subject to enhanced penalties and further relays that to the prosecutor, the prosecutor *must* ask the trial court to postpone the sentencing so that ruling may be reviewed." Mr. Fitzgerald misreads D.C.Code § 23–111(d)(2). That section does not mandate a government appeal prior to sentencing where the trial court decides that a defendant "is not [ ] subject to an increased sentence as a matter of law." Rather, Section 23–111(d)(2) permits the government to ask the trial court to postpone sentence pending an appeal of the enhancement penalty issue. Thus, Section 23–111(d)(2) is unlike Section 23–111(c)(2). Section 23–111(c)(2) contains explicit language that if a person fails to challenge before sentencing the use of a previous conviction to enhance sentence, the right to challenge "shall be waived unless good cause be shown for failure to make a timely challenge." *See Sanders v. United States,* 809 A.2d 584, 600–01 (D.C.2002). In contrast, Section 23–111(d)(2) contains no waiver language.

Relying on *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a case involving federal sentencing guidelines, Mr. Fitzgerald contends that "the trial court is now free to sentence within or outside any mandatory provisions that are statutorily provided for." *Booker* is inapplicable to this case. As applied, the enhancement provision here relates to Mr. Fitzgerald's prior conviction, not the offense to which he entered a guilty plea in the District.